Lois **TITSWORTH**, Plaintiff–Appellant,

v.

**Larry and Willimenue POWELL,**
**Defendants–Respondents.**

**No. 54735.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 15, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 13, 1989.

Hullverson, Hullverson & Frank, James E. Hullverson, Jr., St. Louis, for plaintiff-appellant.

Thomas C. De Voto, Wuestling, James & De Voto, St. Louis, for defendants-respondents.

SIMON, Chief Judge.

Appellant, Lois Titsworth, appeals a jury verdict in favor of respondents, Larry and Willimenue Powell. Appellant, a tenant, sought recovery for injuries sustained in her fall on commonway basement steps in an apartment building owned by the Powells.

Appellant contends that the trial court erred in: (1) overruling appellant's objection that the respondent made an improper and erroneous final argument because the argument was an unfair comment on evidence which respondents caused the court to exclude in a series of objections from the deposition of appellant's expert architect; (2) overruling appellant's objection that the respondents, in their closing argument, materially and prejudicially changed the criteria submitted in the verdict directing instruction; (3) refusing appellant's tendered instruction A, because instruction A properly submitted the ultimate fact constituting wrongdoing, as opposed to evidentiary detail in the court's submitted Instruction No. 8; (4) submitting respondents' comparative fault Instruction No. 10 because it was not supported by a legal duty incumbent upon appellant, it was a vague roving commission, it was unsupported by the evidence, and it was unsupported by any fact or construction of logic; and (5) excluding evidence of the Land Reutilization Authority (LRA) contract which was relevant to show that the respondents were obliged to conform to BOCA code standards in order to further show that the steps were unreasonably dangerous. We affirm.

The record on appeal reveals the following evidence viewed in the light most favorable to the verdict, considering only that evidence which supports the verdict, and disregarding contrary evidence and inferences. *Lane v. Cape Mutual Insurance Company*, 674 S.W:2d 644, 645[1] (Mo.App. 1984).

The involved steps are in the basement of a four family flat at 4321 Shreve in the City of St. Louis, Missouri. The respondents owned the building. They purchased it from the LRA in June of 1983. In connection with the purchase of the building, respondents executed an LRA contract which contained a code compliance requirement. However, the trial court excluded the contract from evidence, sustaining the respondents' objection on grounds that the contract was not pled, and was therefore outside the scope of the pleadings. The trial court also denied the appellant leave to amend her pleading because she failed to introduce evidence that she was a third party beneficiary of the LRA contract.

Appellant had pleaded common law negligence based on allegations of the steps' geometric defects, along with the claim that the steps violated the BOCA code, a national building code, which has been adopted by the City of St. Louis. The code stipulates maximum allowable steepness with regard to steps, but the code generally does not apply to structures such as the respondents' building which was built before the code was adopted. Hence, the court disallowed evidence of the code for the purpose of showing code violations. However, the court allowed the introduction of the code as some evidence of what is a standard of safety.

The basement steps are concrete. For a person descending the steps, there is a bare wall to the left and open space to the right. There is no handrail on either side of the steps. There are seven steps altogether, but only the top three steps are involved, since the fall occurred between the second and third steps. Evidence at trial showed that the steps were not uniform, were uneven, unlevel and had variation within each step. Appellant contended at trial that this defective condition of the steps was unreasonably dangerous, and that the steepness of the steps caused her to lose her balance, fall and sustain a fractured dislocation of her right ankle. Appellant admitted, however, that she had never complained to the respondents about any excessive steepness of the steps or the lack of a handrail.

Appellant's expert witness, an architect, Ms. Heidi Fichtenbaum, testified about her examination of the steps, and her assessment of their safety or danger. Fichtenbaum was unavailable at the trial; therefore, her deposition was read in lieu of live testimony. The court excluded several portions of Fichtenbaum's testimony pursuant to respondents' objection. According to respondents, the condition of the steps was a subject matter of which ordinary jurors were well aware; thus, the expert's conclusions would invade the province of the jury. Nevertheless, the court allowed portions of Fichtenbaum's testimony describing a "universal formula," which is an architectural standard of dimensions, recommended for comfortable stairway travel. However, her opinion that respondents' steps were unreasonably dangerous was stricken from the record.

Appellant was a 35 year old teacher, wife and mother. She was 5'4" and weighed approximately 190 pounds the day she fell. Appellant testified that she normally used the steps about twice weekly, and that she had never had any difficulty using the steps prior to this particular incident.

The fall occurred on July 3, 1984, as appellant was descending the steps using both hands to carry a basket of laundry. Appellant testified that as she went down the steps she was able to see the steps, and there were no debris or oil spots on them, nor were they cracked. Appellant testified that she stepped normally, the way she routinely went up and down the steps, striding through them, not stopping and going. As she was descending the steps, between steps two and three, she alleges that she lost her balance. Appellant admitted that she does not recall actually seeing her foot come down on the step tread of the second step, nor does she recall feeling

anything unusual about the way that her foot came down on the second step. According to her testimony, her right foot landed on the tread of the third step. She landed on the outside of her foot, turning the foot in and under her, and she immediately collapsed on the third step. As a result of the fall appellant sustained a fractured dislocation of the right ankle. This was reduced in an operation at Jewish Hospital.

Following her fall, appellant developed various health problems including an ailment in both feet known as tarsal tunnel syndrome, back pain, increased hypertension, and a weight gain of 70 pounds. Appellant attributes all of these complications to her fall and subsequent inactivity. Dr. Tyrus Winters, appellant's family physician, opined that appellant's ankle fracture and subsequent inactivity were the direct cause of her weight gain, which in turn, aggravated her hypertension. He stated that exercise must be incorporated as one of the features of any successful diet. Dr. Winters admitted, however, that the primary method of controlling weight is diet, that appellant has not watched her diet, and that if she had controlled her diet, despite inactivity, he would have expected to see some weight loss. Dr. Susella Samudralla, appellant's physical rehabilitation physician, stated in her deposition that appellant's back problems are probably due to multiple causes, including her fall, inactivity, obesity, impaired posture and impaired gait. The cause of appellant's medical problems was contested at trial, with appellant claiming that it was due to her inactivity induced by her injuries from the fall, and respondents contending that appellant's ailments were the result of her failure to control her diet.

Appellant's first point on appeal is that respondents' final argument was improper and erroneous in two respects: First, appellant objects to respondents' remark, "If you think about what Miss Fichtenbaum told you, she is telling you that this black staircase is the safest and most reasonable steps that can be built." Appellant contends that the court erred in overruling her objection to this remark because it improperly distorted and mischaracterized Fichtenbaum's testimony.

The black staircase exhibit was a drawing of stairs conforming to the BOCA code, with each step measuring exactly eight inches in height. Fichtenbaum testified that the code represented a maximum allowable steepness of eight inches and, "according to the universal formula, even that would create a fairly steep stair and we would prefer in professional practice to maintain a seven inch ... height...." ·

█ It is clear from this portion of Fichtenbaum's testimony that the black staircase drawing did not represent the ideal or safest step that can be built. Therefore, limited to this particular portion of Fichtenbaum's testimony, the inference that the drawing represented the safest step is erroneous. Yet, in closing argument, counsel is afforded wide latitude to suggest inferences from evidence and the trial court similarly has broad discretion to determine if a particular line of argument is proper. *Norfolk and Western Railway Company v. Greening*, 458 S.W.2d 268, 273[7–9] (Mo.1970). The trial court is in the best position to appraise the consequence of argument, and the appellate court may intervene only if it concludes that the trial court has abused that discretion. *Carter v. Liberty Equipment Co., Inc.*, 611 S.W.2d 311, 315[5, 6] (Mo.App. 1980).

█ Moreover, while respondents' inference appears erroneous with respect to that particular portion of Fichtenbaum's testimony, the same inference may be reasonable in light of a different portion of her testimony. Counsel may draw conclusions from the evidence on his own system of reasoning even though such inferences at first blush may appear both illogical and erroneous. *Norfolk*, 458 S.W.2d at 273[7, 9]. Counsel may draw an inference from certain evidence although it is contrary to other evidence. 88 *C.J.S.* Trial § 181 (1955). While counsel may properly refer to and comment on evidence adduced by the other party, he is not obliged to point out evidence which favors his opponent,

and so may disregard any such evidence of an explanatory character. *Id.* We agree with respondents' contention that since Fichtenbaum conceded that the BOCA code allows for some variation, it is reasonable to argue that the black staircase, which did not vary from the code, represented the safest steps which can be built. Therefore, we perceive no prejudice to appellant from respondents' final argument.

Appellant's second contention is that respondents improperly commented on evidence, which the trial court had excluded pursuant to respondents' objection, when they said that Fichtenbaum "never told you that steps some other shape than that are unreasonably dangerous." Appellant claims that this remark falsely implied that Fichtenbaum believed respondents' steps to be a safe variance from the code.

 The rule of law is that a party may not argue his opponent's failure to produce evidence when he has induced the court to exclude that evidence. Appellant cites two cases in support of this rule: *Sansone v. Londe,* 753 S.W.2d 339 (Mo. App.1988); *Calvin v. Jewish Hospital of St. Louis,* 746 S.W.2d 602 (Mo.App.1988). However, these cases are distinguishable, because the comments which were held improper were based on evidence which was entirely excluded. Here, the claimed error arises out of argument concerning the testimony of an expert witness, part of which was introduced. The trial court ruled that Fichtenbaum's ultimate conclusion that respondents' steps were unreasonably dangerous invaded the province of the jury and was not a proper subject matter of expert testimony. Nevertheless, over respondents' objection, the trial court allowed portions of Fichtenbaum's testimony describing the uniform formula and the BOCA code as examples of safe stairways.

In her admitted testimony, Fichtenbaum stated that respondents' steps did not conform to either the BOCA code or the universal formula. Respondents argue that this testimony raised a very strong inference that their steps were dangerous as being "out of norm" and different from "code steps." We agree with respondents'

contention that there was a reasonable inference that because the code and the universal formula were examples of safe stairways, it did not necessarily follow that steps in some other configuration were unreasonably dangerous.

Also, Fichtenbaum testified that the preferred professional standard is the universal formula, which varies from the BOCA code. Thus, it was not improper for respondents to have inferred from this testimony that steps varying from the code are not necessarily unreasonably dangerous. This inference came from testimony which appellant chose to introduce. Accordingly, we do not agree that respondents' remark referred to excluded evidence. We conclude that the inference drawn was within the bounds of reasonable argument under the circumstances as created by appellant's evidence and argument, *Carter v. Willert Home Products,* 714 S.W.2d 506, 514[8] (Mo. banc 1986), and the trial court did not abuse its discretion in overruling appellant's objection to respondents' final argument. Point denied.

Appellant's second point is that the court erred in overruling her objection to respondents' statement in final argument that "in order to return a verdict ... you have to believe that she lost her balance as a result of those steps and as a result of nothing that she did...."

Appellant first contends that this argument was a complete misstatement of the law of causation as submitted in her verdict directing instruction which reads in pertinent part, "Fourth, such failure either directly caused or directly contributed to cause damage to Lois Titsworth."

Appellant interprets respondents' argument as demanding a defense verdict if there were any comparative fault on her part. She claims this was prejudicial and erroneous because it would have been perfectly permissible for her to have a verdict and recover damages if she lost her balance as a result of both the steps and some contributing fault on her part in the way she negotiated the steps.

It is true that misstatements of law are impermissible during closing argument, and a positive and absolute duty, as opposed to a discretionary duty, rests upon a trial judge to restrain such arguments. *Heshion Motors, Inc. v. Western International Hotels,* 600 S.W.2d 526, 534[6, 7] (Mo.App.1980). On the other hand, it is equally recognized that the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or a defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments. *Id.* In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation. *Lewis v. Bucyrus–Erie, Inc.,* 622 S.W.2d 920, 927[13, 14] (Mo. banc 1981).

Respondents' argument was as follows:

> And what this lady did was that she tripped ... and fell. And that ... is not losing your balance because of anything to do with the steps, that's because you missed a step. And in order to return a verdict ... you have to believe that she lost her balance as a result of those steps and as a result of nothing that she did.

Later in their final argument, respondents state:

> You have to find these things ... that they directly caused *or directly contributed* to cause the fall. If you don't find that, even if you find these things, and I submit that they don't have *anything* to do with this accident, then you can't return a verdict for the plaintiff ... your verdict must be for the defendants unless you believe defendants failed to use ordinary care ... and that Lois Titsworth was injured as a direct result thereof ... If you decide that, then the court has told you there's another thing you then have to consider. And that is, whether or not you believe my clients were partly at fault, whether or not Mrs. Titsworth was partly at fault. And I believe, ladies and gentlemen, that if you believe my client is at fault, then the percentage of fault as to Mrs. Titsworth

has to be eighty or ninety percent ... (Emphasis added.)

The bottom line of respondents' argument is that if the configuration of their steps did not cause or contribute to cause appellant's injury, then the verdict must be for respondents. We do not find that this argument, read in its entirety, misstated the law.

Appellant's second point also claims that respondents substituted a loss of balance finding of fact for the criteria submitted in the verdict directing instruction when they said:

> If you don't believe that she didn't lose her balance, then I put it to you that you cannot return a verdict ... but you cannot return a verdict against my clients because that's her theory in this case ... that she lost her balance simply because she was walking down the steps.

Initially, we note that appellant has not filed, in her brief or the legal file, the submitted verdict director. However, we will do our best to review her point without having the instruction before us. We find that the argument is directed to assume a loss of balance, and that to return a verdict for appellant, the jury must conclude that the condition of the steps caused or contributed to cause the loss of balance.

Additionally, in her own final argument, appellant states:

> So we've got multiple things working in compound fashion. All of which contribute to lose your balance ... We've proved all these things. There can be no dispute about it.

Based on this statement, along with several others including paragraph 8 of appellant's pleading and appellant's own testimony that she lost her balance, we discern no prejudice in respondents' argument. All of appellant's evidence at trial was directed toward proving a loss of balance due to the condition of the steps. The law indulges a liberal attitude toward argument, particularly where the comment complained of is a fair retort or responds to prior argument of opposing counsel. *Lewis,* 622 S.W.2d at 926[6, 7]. Thus, respondents have not exceeded the evidence or otherwise urged prejudicial matters. Point denied.

In her third point, appellant alleges that the trial court erred in refusing her tendered instruction A, a verdict directing instruction, as opposed to the court's given Instruction No. 8, setting forth evidentiary detail.

This point is not preserved for review because appellant has failed to incorporate Instruction No. 8 in the record on appeal or in her brief as required by Rule 84.04(e). Respondents raised this issue in their brief, but appellant failed to include this instruction in her reply brief. Therefore, in our discretion, we shall review for plain error in accordance with Rule 84.13(c).

The submission or refusal to submit the tendered instruction is within the discretion of the trial court. *Butler State Bank v. D & G Construction Co., Inc.*, 659 S.W.2d 239, 245[3] (Mo.App.1983). Before reversal can be predicated on instructional error, the complaining party must show that the instruction resulted in prejudice, *Lee v. Mirbaha*, 722 S.W.2d 80, 81[1] (Mo. banc 1986).

Appellant states that Instruction No. 8 improperly required a finding of evidentiary detail, but she does not indicate in what manner she was prejudiced. The transcript indicates that Instruction No. 8 tracked MAI 22.05, as modified by MAI 37.01, 19.-01, 35.06(1). Apparently, appellant is complaining about the evidentiary detail set forth in Paragraph First, where the condition which caused the injury should be described. However, we discern no manifest injustice. Since we do not have the submitted Instruction No. 8 before us, we shall defer to the trial court's discretion in refusing Instruction A. Point denied.

In her fourth point, appellant alleges error in the giving of comparative fault Instruction No. 10, because the submission in Paragraph First, that appellant failed to use the wall to assist her was not supported by a legal duty incumbent upon her to do so. Appellant asserts that the instruction was a vague roving commission, was unsupported by the evidence, and was unsupported by any fact or construction of logic that a wall to the side of the steps would prevent a loss of balance.

We agree that it is error to give a jury instruction where there is no evidence to support it or if the evidence presented leaves the causal connection in the nebulous twilight of speculation, conjecture and surmise. *Cowan v. Perryman*, 740 S.W.2d 303, 304[1] (Mo.App.1987). Nevertheless, we reiterate that before reversal can be predicated on instructional error, the complaining party must show that the instruction resulted in prejudice. *Lee*, 722 S.W.2d at 83[1].

In *Biever v. Williams*, 755 S.W.2d 291, 294[4] (Mo.App.1988), the court held that the Bievers had no basis to complain of a comparative fault instruction, because they suffered no prejudice since the jury found Mrs. Biever to have been 100% at fault with no fault to Williams. Here, the jury found appellant's fault to be 100% and respondents' fault to be 0%. Basically, this amounts to a general verdict for the respondents. Thus, appellant was not prejudiced by any alleged error in the comparative fault instruction. *Id.* Point denied.

In her final point, appellant claims that the court erred in excluding evidence of the LRA contract which contained a clause requiring the premises to conform to code. The trial court is vested with substantial discretion in controlling and ruling on the admissibility of evidence. *Gant v. Hanks*, 614 S.W.2d 740, 744[3, 4] (Mo.App.1981). However, appellant contends that she properly pleaded that the steps violated the BOCA code as an ultimate fact, and the contract was relevant evidence to show that respondents' property was obliged to conform to BOCA code standards in order to further show that the steps were unreasonably dangerous.

Missouri Supreme Court Rule 55.05 stipulates that a pleading that sets forth a claim for relief shall contain a short and plain statement of the facts showing that the pleader is entitled to relief. It is not necessary to plead facts and circumstances by which ultimate facts may be established. *Scheibel v. Hillis*, 531 S.W.2d 285, 290[12, 14] (Mo. banc 1976). In essence, appellant's claim is that it was unnecessary to plead the LRA contract, since it was merely an evidentiary foundation upon which

the ultimate fact of code violation was established.

Appellant's petition in Count 2 alleges negligence based upon a violation of the BOCA code. In order to sustain an action for negligence, plaintiff must allege ultimate facts which, if proven, show existence of a duty upon defendant to protect plaintiff from injury. *Scheibel*, 531 S.W.2d at 288[1].

Since the trial court ruled that the code did not apply, the code did not impose a duty on respondents to comply. Thus, appellant's claim for negligence based upon a violation of the code was not viable. However, appellant's action could be based upon the code violation by proving a breach of the respondents' contract with LRA establishing a duty on respondents to comply with the code. Clearly, the contract would be an essential element of appellant's action for breach of contract, and appellant would have to plead the contract as a fact.

Furthermore, we deny appellant's claim that the contract was relevant to establish respondents' duty to appellant to conform to the BOCA code regulations. To be relevant, evidence must establish a fact which tends to prove a fact in issue. *Haymart v. Freiberger*, 498 S.W.2d 590, 593[1, 3] (Mo. App.1973). The LRA contract would be relevant if it tended to prove respondents' duty to appellant.

Since appellant was not a party to the contract, appellant needed to establish that she was a third party beneficiary of the contract. However, appellant did not so plead nor did she introduce evidence to show a third party beneficiary relationship. Accordingly, the trial court did not abuse its discretion in ruling that the LRA contract was inadmissible evidence because it was outside the scope of the pleadings. Point denied.

Judgment affirmed.

DOWD, P.J., and HAMILTON, J., concur.