Thomas M. FITCH, Respondent,

v.

J.A. TOBIN CONSTRUCTION
COMPANY, INC.,
Appellant.

No. WD 43625.

Missouri Court of Appeals,
Western District.

March 3, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 1992.

Application to Transfer Denied
June 2, 1992.

Craig A. Strayer, Strayer & Mirabile, Kansas City, for appellant.

Mark D. Wasserstrom, Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

ULRICH, Judge.

Defendant, Tobin Construction Company, Inc. (Tobin), appeals from judgment in the sum of $167,000 entered following jury verdict in behalf of plaintiff, Thomas A. Fitch, for breach of employment contract. Tobin argues five points on appeal. Tobin contends that (1) the contract, in the form of a written memorandum of understanding (memorandum), signed by Tobin and Mr. Fitch, violates § 351.315, RSMo 1986, and is, therefore, void and unenforceable; (2) Mr. Fitch failed to obtain approval of the memorandum by Mark Twain Bank, allegedly a condition precedent, and, therefore, the memorandum is not a binding contract; (3) Mr. Fitch failed to contribute capital of $500,000 or stock having the value of $500,000 to Tobin which Tobin contends is a nonseverable condition required by the memorandum; (4) the trial court erred in refusing to instruct the jury with Tobin's proffered verdict director for breach of fiduciary duty by Mr. Fitch as alleged in Tobin's counterclaim; and (5) the trial court erred by refusing to give Tobin's proffered affirmative defense instruction for breach of fiduciary duty or, alternatively, for Mr. Fitch's failure to satisfy a condition precedent. The judgment is affirmed.

The evidence favorable to the verdict shows that Mr. Fitch managed construction businesses. He owned an interest in Bennett Construction Company, a commercial builder, and he owned Anderson Construction Company, Inc. (Anderson), a company that builds bridges.

Tobin was active in highway construction. Tobin was owned by Patricia O'Rourke and her sons. Patricia O'Rourke was President and Chairman of the Board of Directors, and she owned a majority of the Tobin stock.

In 1986, Tobin was financially distressed. This circumstance impaired Tobin's ability to acquire bonding and, hence, to bid on new construction jobs. Tobin was in search of new management at the recommendation of a consultant who had devised a five-year plan to restore the profitability of the corporation.

Mr. Fitch was a social acquaintance of the O'Rourke family. In June 1986, Conn O'Rourke, son of Patricia O'Rourke, met with Mr. Fitch to discuss Tobin. He told Mr. Fitch that Tobin was beset by serious problems and that the company had recently lost over $20 million. Conn O'Rourke said that the company needed new management, and he arranged for Mr. Fitch to meet with his mother, the virtual owner of Tobin.

Mr. Fitch met with Mrs. O'Rourke and her husband, Keith, a banker. Keith O'Rourke was employed with the First National Bank, where Tobin had done business until that bank asked Tobin to transfer its account elsewhere. Tobin then utilized the services of a savings and loan company in its day-to-day financial operation, but the O'Rourkes did not believe such an institution was equipped to service the needs of a contractor. An installment payment on a loan to Tobin was due to the savings and loan company in October 1986, and Tobin urgently sought a new lender. Other needs of Tobin were discussed at the meeting. As a result of this meeting, Mr. Fitch later became president of Tobin.

On September 4, 1986, Mark Twain Bank committed to loan Tobin seven million dollars. Patricia O'Rourke, Shaun O'Rourke, and Thomas Fitch guaranteed the $7 million Tobin note. Before issuing the loan, Mark Twain Bank required that the Tobin stock be pledged to secure the loan. Mr. Fitch pledged the stock he acquired in Tobin, 20 percent of all issued Tobin stock, as later provided by the October 1, 1986, memorandum between Tobin and Mr. Fitch.

The memorandum signed by Mr. Fitch and Mrs. O'Rourke for Tobin on October 1, 1986, was in letter form from Mr. Fitch to Patricia O'Rourke, Tobin chairman. Relevant provisions of the memorandum include the following: "While both of us intend that our agreement will later be more fully described in detailed documents, this Memorandum of Understanding will be binding on both Tobin and me in the event that no such further documents are executed, *subject, however, to the prior approval of Mark Twain Bank."* (Emphasis added.) The emphasized portion of the paragraph was handwritten and added at the time of execution on October 1, 1986, by Tobin's attorney. The memorandum further states:

1. Effective immediately, I am to become an employee, officer and director of Tobin. I will have the title of president of the corporation. For a period of five (5) years, Tobin's obligation to pay me a salary and certain deferred compensation will be absolute—even if my employment is terminated for any reason—so that the following financial obligations of Tobin to me are unconditional:

| Year | Salary Amount | Deferred Compensation Amount* |
|---|---|---|
| 1 | $ 52,000.00 | $ 0 |
| 2 | 52,000.00 | 23,000 .00 |
| 3 | 52,000.00 | 48,000 .00 |
| 4 | 100,000.00 | 0 |
| 5 | 100,000.00 | 0 |

* Deferred compensation to become payable at the end of the three (3) year term of the loan agreement with Mark Twain Bank.

2. While it's a matter of opinion, I believe that the stock interest which I own in Anderson Construction Company, Inc., a Kansas corporation ("Anderson") has a value of $500,000. Indeed, this is the amount of my present investment in Anderson. I will immediately transfer all of my interest in Anderson to Tobin, and I am to receive in return therefor an amount of Tobin stock which after the issue to me will be equal to twenty percent (20%) of the total issued and outstanding stock of Tobin. Regarding a minority block of stock in Anderson in which an employee has an interest and which has been pledged to secure indebtedness of that employee, it will be my responsibility eventually to deliver good title to that block of stock to Tobin, free and clear of liens or claims, but my inability immediately to deliver Tobin one hundred percent of Anderson's issued and outstanding stock will not delay or interfere with the other terms and conditions of this agreement.

3. Upon the termination of my employment by Tobin for any reason, (including for my death) Tobin will buy back my Tobin stock for the following described sum:

a. Five Hundred Thousand Dollars ($500,000); plus

. . .

4. As long as I am an employee of Tobin, it will pay for the following expenses for me:

. . . .

e. Such additional fringe benefits as are provided to the executives of Tobin.

5. As you are aware, in consideration for the foregoing, I personally guarantee Tobin's Seven Million Dollars ($7,000,000) aggregate amount of loans being obtained from Mark Twain Bank, and this personal guarantee from me is a condition being imposed by the Bank on making such loan.

Some of the memorandum's provisions were fulfilled and others were not. The memorandum was never altered by a sub-

sequent contractual agreement. Mark Twain Bank neither approved nor disapproved the memorandum. Mr. Fitch never transferred to Tobin all of his interest in Anderson. As provided in paragraph No. 5 of the memorandum, Mr. Fitch had personally guaranteed Tobin's $7 million loan from Mark Twain Bank.

Mrs. O'Rourke claimed she signed the memorandum because she understood that Mr. Fitch was to contribute $500,000 in cash to Tobin. She emphasizes that according to the loan agreement signed by Mark Twain Bank on September 4, 1986, Mr. Fitch was to contribute $500,000 in cash to Tobin between October of 1986 and March 1987.

Mr. Fitch contends the memorandum provides that he would deliver Anderson stock to Tobin in exchange for stock in Tobin equivalent to twenty percent of Tobin's issued stock. He also emphasizes that because the memorandum makes provision should he be unable to immediately deliver his Anderson stock, his inability to deliver the stock does not affect other provisions of the contract. Thus, he contends, this clause makes the stock swap severable from the employment agreement.

The evidence reflects that Tobin agreed to finish the Nemaha construction project begun by Anderson because Tobin needed the bridgework and Anderson could not continue the Kansas Department of Transportation project. Anderson no longer had workers' compensation insurance. Additional evidence includes Shaun O'Rourke's letter to the Kansas Department of Transportation requesting a ninety-day extension to file Anderson's new contractor's qualification statement disclosing that Tobin was buying Anderson. Tobin was paid for the work the company performed on the Nemaha project.

## I

■■■ Tobin contends that the trial court erred in denying its motion for directed verdict at the close of all the evidence because, Tobin avers, the memorandum violates § 351.315, and is, therefore, void and unenforceable. Tobin argues that § 351.-

315.1 prohibits a corporate director from serving more than three years on the board of directors. Because the memorandum attempts to employ Mr. Fitch for a period of five years as a director of Tobin, Tobin argues that the contract is void and unenforceable. The first relevant provision of the memorandum states,

Effective immediately, I am to become an employee, officer and director of Tobin. I will have the title of president of the corporation. For a period of five (5) years, Tobin's obligation to pay me a salary and certain deferred compensation will be absolute—even if my employment is terminated for any reason. . . .

The second relevant provision of the memorandum states that as long as Mr. Fitch is a Tobin employee, Tobin will pay certain of Mr. Fitch's expenses.

The contract language reveals that the parties contemplated a five-year employment agreement. The agreement states that Mr. Fitch is to be paid for five years even if his employment is terminated. It does not state that he is to be paid for five years if his directorship or position as an officer of the corporation is terminated. In Missouri, directors of corporations are not entitled to compensation or salary for performing usual and ordinary duties pertaining to their office unless compensation for such service is provided for in the charter or otherwise by bylaw or board of directors' resolution before services are rendered. *Triplett v. Grundy Elec. Coop., Inc.*, 389 S.W.2d 401, 406 (Mo.App.1965); *Emergency Patient Serv., Inc. v. Crisp*, 602 S.W.2d 26, 28 (Mo.App.1980). No resolution was introduced that the board of directors authorized compensation for Mr. Fitch as a member of the board of directors before he rendered services. The memorandum provided that Mr. Fitch would be an employee of Tobin for five years, but it did not provide that Mr. Fitch would be an officer or director of Tobin for five years. The memorandum did not violate § 351.315. Point I is denied.

## II

■■■ As its second point, Tobin contends the evidence established that Mr.

Fitch failed to comply with a condition precedent contained in the memorandum. Specifically, Tobin claims that Mark Twain Bank did not first approve the memorandum, a requirement for the memorandum to be effective and binding. Tobin's second point relies on the language contained in the memorandum that "while both of us intend that our agreement will be more fully described in detailed documents, this memorandum of understanding will be binding upon both Tobin and me in the event that no such further documents are executed, *subject, however, to the prior approval of Mark Twain Bank*." (Emphasis added.) The emphasized portion of the sentence was handwritten and added to the typed portion of the memorandum by counsel for Tobin at the time the document was signed on October 1, 1986. Mr. Fitch acknowledged that he did not present the signed memorandum to Mark Twain Bank for approval because, he said, he did not want to do anything that might prevent funding of the Mark Twain Bank loan, including providing the bank the memorandum, which might contain something to frustrate the loan. However, Mr. Fitch, through his attorney, sent a letter to Tobin's attorney which stated:

> As far as Tom [Fitch] is concerned, you are fully authorized to furnish a copy of this letter, including copies of the enclosures hereto, along with a copy of the October 1, 1986, memorandum of understanding between Tom Fitch and Mrs. O'Rourke to Mark Twain Bank as evidence of Tom's fulfillment of his obligation in the accomplishment of the first of the six components of Tobin's financial plan.

The six component Tobin financial plan was formulated in August 1986.

A condition precedent is defined as "an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective." *Historic Hermann, Inc. v. Thuli,* 790 S.W.2d 931, 936 (Mo.App.1990); *Juengel Constr. Co. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 513 (Mo.App.1981). "Conditions precedent are disfavored, and contract provisions are construed as such only if unam-biguous language so requires or they arise by necessary implication." *Juengel,* 622 S.W.2d at 513.

Tobin argues that the memorandum never became effective because Mark Twain Bank never approved it. However, Mark Twain Bank knew the major points of the contract. In a letter dated September 30, 1986, Shaun O'Rourke reaffirmed the six major points of Tobin's business plan with Ed Enloe, the president of Mark Twain Bank. Shaun O'Rourke's letter stated: "This letter will verbally incorporate the six major points of our financial business plan as presented to you by Tom Fitch and myself as our cash flow projection of August 1, 1986." Shaun Q'Rourke's letter also stated the first point of Tobin's financial business plan: "Mr. Fitch's contribution starting in October of $100,000 and going on until either a total of $500,000 is accomplished or a sale of the remaining bridge equipment happens and Tom will come up with the net difference by March 31, 1987." Thus, Mark Twain Bank knew and approved of this provision contained in the memorandum. Mark Twain Bank also knew, therefore, that Mr. Fitch was associated in some way with Tobin.

The language in the memorandum is ambiguous. The sentence which states the purported condition precedent says, "While both of us intend that our agreement will later be more fully described in detailed documents, this memorandum of understanding will be binding on both Tobin and me in the event that no such further documents are executed, subject, however, to the prior approval of Mark Twain Bank." Immediately following this sentence appears the paragraph which makes the condition precedent ambiguous. The paragraph states: "Effective immediately, I am to become an employee, officer, and director of Tobin. I will have the title of president of the corporation." Thus, according to the memorandum, Mr. Fitch immediately became an employee, officer, and director of Tobin despite the purported condition precedent. According to the language of the purported condition precedent, Mr. Fitch could not become an em-

ployee, buy stock in Tobin, or do anything else pursuant to the agreement until Mark Twain Bank approved the memorandum. Yet, paragraph five of the memorandum provides that Mr. Fitch would guarantee Tobin's $7 million loan, a condition imposed by Mark Twain Bank to make the loan. Mr. Fitch complied with this paragraph of the memorandum and guaranteed the loan.

A condition precedent could not exist because the memorandum's language is ambiguous and contradictory. *Id.* Additionally, had a valid condition precedent existed, the record reflects clear and unequivocal conduct by Tobin to purposely waive the condition precedent. *Steinberg v. Fleischer,* 706 S.W.2d 901, 905 (Mo.App. 1986). Tobin waived the claimed condition precedent by accepting the benefits of the memorandum. Tobin accepted Mr. Fitch's services, paid him the salary agreed to in the memorandum, and accepted the benefit of Mr. Fitch's personal guarantee on the $7 million loan from Mark Twain Bank. Tobin's second point is denied.

## III

▮ Tobin contends, as its third point, that the memorandum is not severable and Mr. Fitch failed to substantially perform the terms of the memorandum by failing to contribute capital worth $500,000 to Tobin. The issue of whether a contract is severable depends on the facts and circumstances of each case. *B & B Equip. Co. v. Bowen,* 581 S.W.2d 80, 87 (Mo.App.1979).

> The essential test to determine whether a number of promises constitute one contract or more than one is simple. It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.

*Id.* (quotation omitted).

The facts and circumstances of this case demonstrate that the principal purpose of the agreement was Mr. Fitch's employment by Tobin. Mr. Fitch was approached by Tobin because Tobin experienced financial difficulty and needed new management.

Tobin searched for new management because a consultant recommended Tobin obtain new management. Tobin hired Fitch because Tobin believed Fitch was the right person to implement Tobin's five-year "turnaround" plan.

Although Mrs. O'Rourke has claimed that she would not have agreed to the memorandum without Mr. Fitch agreeing to contribute $500,000 in cash, at least two significant factors do not support her claim that the memorandum requires such contribution. First, the memorandum provided that Mr. Fitch was to exchange his Anderson stock for Tobin stock. The memorandum is void of any provision requiring Mr. Fitch to infuse Tobin with $500,000 in cash. The parties agreed that the memorandum would be binding, although they intended some later modifications. The memorandum was not amended to require Mr. Fitch to infuse Tobin with cash. Secondly, the memorandum provides that Tobin would buy back Mr. Fitch's Tobin stock upon his termination as Tobin's employee, further supporting the position that the primary purpose of the agreement was to employ Mr. Fitch.

Although Tobin claims on appeal that Mr. Fitch's contribution to Tobin was the only reason Tobin signed the memorandum, Tobin offered no evidence which establishes this claim. Both parties agreed on some type of capital contribution, but the contribution of capital never occurred. The memorandum provides that Mr. Fitch was to exchange stock in Anderson for stock in Tobin, but this provision is not an agreement to infuse much-needed cash. Additionally, the agreement states that Mr. Fitch's "inability immediately to deliver Tobin one hundred percent of Anderson's issued and outstanding stock will not delay or interfere with the other terms and conditions of the agreement." This clause supports the position that the main purpose of the memorandum was to employ Mr. Fitch and not to obtain cash infusion to Tobin from Mr. Fitch. Finally, Tobin's failure to demand capital infusion from Mr. Fitch demonstrates that the memorandum was primarily a contract of employment. If the

memorandum's principal purpose was to obtain cash from Mr. Fitch, Tobin's dire need for cash would have resulted in Tobin seeking to enforce this provision of the agreement. Therefore, the facts and circumstances of this case demonstrate that the main objective of the contract was to employ Fitch. The memorandum did not require a cash infusion by Mr. Fitch. Tobin's third point is denied.

## IV

■ Tobin, as its fourth point on appeal, contends that the court erred in denying Tobin's alternative motion for a new trial because, Tobin alleges, the court improperly refused to give the jury Tobin's proffered verdict director instruction for breach of fiduciary duty on Mr. Fitch's counterclaim. Tobin claims that Mr. Fitch breached his fiduciary duty to Tobin in favor of himself and Anderson, his construction company.

In July 1987, Tobin subcontracted with Anderson to complete the bridge project known as Nemaha County Project in Kansas. This project was bonded by Employers' Insurance of Wausau. Mr. Fitch personally guaranteed the bond and understood that if a claim were made on the bond, Wausau could seek indemnification from him for any monies paid by the insurance company. Until May 1987, Anderson was also working on a Jackson County project which was also bonded by Employers' Insurance of Wausau and personally guaranteed by Mr. Fitch pursuant to an indemnification agreement between Wausau and him.

When the memorandum between Tobin and Fitch was executed on October 1, 1986, Anderson owed Fitch $150,000 from loans which Fitch had made to Anderson. Tobin claims that Anderson received $219,203.60 for work performed by Tobin on the Nemaha County Project. Anderson paid a total of $70,000 to Tobin for its subcontract work on the Nemaha project. Tobin claims that the following payments are relevant to demonstrate Mr. Fitch's breach of fiduciary duty as president of Tobin and creditor of Anderson. On October 15, 1987, Mr. Fitch signed a check payable to himself in the amount of $5,000 drawn on Anderson to repay himself for money he had loaned Anderson. On October 26, 1987, Mr. Fitch signed a check payable to himself in the amount of $15,000 drawn on Anderson to repay himself for money that he had loaned Anderson. All of the monies deposited into the Anderson account which covered these checks paid to Mr. Fitch were received from the Kansas Department of Transportation for work performed by Tobin on the Nemaha County Project in Kansas.

The general rule provides that

[A] party is entitled to have his own theory of the case submitted to the jury by instructions provided the instructions are within the pleadings and evidence and are correct in form and substance. Under such circumstances a defendant has the same right to submit his side of the case to the jury as the plaintiff has.

*Orloff v. Fondaw,* 315 S.W.2d 430, 433 (Mo.App.1958). The trial court in this case declined to instruct using the instruction submitted by Tobin on its theory that Mr. Fitch breached his fiduciary duty to Tobin. The instruction stated:

Your verdict must be for the defendant if you believe:

First, plaintiff was president of J.A. Tobin Construction Company, and

Second, that Anderson Construction Company received the monies from the Kansas Department of Transportation for work performed by J.A. Tobin Construction Company, and .

Third, plaintiff, while employed as president of J.A. Tobin Construction Company, placed his own self-interests above those of J.A. Tobin Construction Company in his exercise of control over the monies mentioned in paragraph second, and

Fourth, that as a direct result of such conduct the defendant was damaged.

Not in MAI. *Forinash v. Dougherty,* [sic] 697 S.W.2d 294 (Mo.App.1985), submitted by defendant.

"A trial court will not be convicted of reversible error for failure to give an instruction, unless the instruction is substan-

tially correct, some authorities say strictly and entirely correct." *Hogan v. Kansas City Pub. Serv. Co.*, 322 Mo. 1103, 19 S.W.2d 707, 711 (banc 1929). Furthermore, "it is error to give a jury instruction where there is no evidence to support it or if the evidence presented leaves the causal connection in the nebulous twilight of speculation, conjecture and surmise." *Titsworth v. Powell*, 776 S.W.2d 416, 423 (Mo.App. 1989). "In determining whether an instruction should have been given or withheld based on the evidence at trial, the appellate court views all evidence in the light most favorable to submission of the instruction." *Childers v. State Farm Fire & Casualty Co.*, 799 S.W.2d 138, 142 (Mo.App.1990). Additionally, for the appellant to successfully challenge the mistake, the instruction must have prejudiced the party. *Id.*

Tobin contends that the instruction offered is based upon substantive law of Missouri that officers and directors of a corporation occupy a position of trust and enjoy a fiduciary relationship which imposes upon them the duty to exercise good faith toward the corporation and to subordinate their selfish interests to those of the corporation where they conflict. *Forinash v. Daugherty*, 697 S.W.2d 294, 301–02 (Mo. App.1985). Mr. Fitch was president of Tobin when money was received by Anderson for work performed by subcontractor Tobin on the Nemaha County Project in Kansas. Mr. Fitch was president of Tobin and Anderson when he wrote checks payable to himself for money owed him by Anderson after money was received and deposited into the Anderson account for work performed by Tobin. In addition to paying himself money owed him by Anderson, Mr. Fitch paid certain Anderson bills with the money received from the Kansas Department of Transportation for work performed by Tobin.

Although Missouri courts have not classified the fiduciary duties of corporate officers and directors, directors and officers are recognized to occupy a fiduciary relationship to the corporation and its shareholders in many different contexts and in varying factual situations. *Id.* For example, a director or officer of a corporation

may not deal with the corporation's property for his own benefit or profit at the expense of the shareholder. *Id.* An officer or director of a corporation is compelled by his fiduciary duty to exercise good faith and subordinate his own selfish interests to those of the corporation where they conflict. *Clark–Lami, Inc. v. Cord,* 440 S.W.2d 737, 740–41 (Mo.1969).

Where it appears that a director or officer has obtained any personal profit from dealing with the corporation, and the transaction is drawn into question as between him and the stockholders of the corporation, the burden is upon the director or officer to show that the transaction has been fair, open and in the utmost faith. These rules apply equally as well where the director or officer has acted in his dealings with the corporation through another corporation of which he is the principal owner or is in control, and especially is this true where a common director or officer is dominating in influence or in character.

*Ramacciotti v. Joe Simpkins, Inc., Inc.,* 427 S.W.2d 425, 431–32 (Mo.1968) (citations omitted).

Assuming, arguendo, that Mr. Fitch owed a fiduciary duty to Tobin, the question becomes whether the instruction offered by Tobin is correct as presented. To be correct, each of the elements presented within the proffered instruction must have an evidentiary basis. *Titsworth,* 776 S.W.2d at 423. Tobin appears not to have been damaged by Mr. Fitch's actions. Tobin was paid in full for the company's work performed in the Nemaha job. Thus, paragraph fourth of the tendered instruction which requires the jury to find that Tobin was damaged by Mr. Fitch's conduct is unsupported by the evidence.

Additionally, the instruction lacks sufficient specificity. The instruction fails to state what Mr. Fitch did to place his own self-interest above Tobin's. Tobin contends that the *Forinash* case controls. 697 S.W.2d 294. Mr. Fitch claims that *Forinash* is not controlling because the instruction in that case involves the fiduciary duty of a director in the sale of a corporation.

*Id.* The instruction offered in *Forinash* is much more specific than the one offered in this case. *Id.* at 299. The *Forinash* instruction states the specific actions of the directors that the jury must find in order to determine the directors guilty of breaching their fiduciary duty. *Id.* The instruction offered in this case is not sufficiently specific. Thus, because Tobin failed to show that Mr. Fitch's actions caused damage to Tobin, an element of the instruction which was not met, and because the instruction offered was insufficiently specific, failing to state which of Mr. Fitch's actions the jury must find to determine him guilty of breaching his fiduciary duty, the trial court did not commit error by refusing the instruction. Tobin's fourth point is denied.

## V

 Tobin contends, as its fifth point, that the trial court erred in denying its motion for a new trial because the court improperly refused to instruct the jury on Tobin's proffered affirmative defense for breach of fiduciary duty, or, alternatively, for failure to satisfy a condition precedent. The instruction proffered by Tobin stated:

> Your verdict must be for defendant on plaintiff's claim for breach of contract if you believe:
>
> First, that in order to become binding upon plaintiff and defendant the contract required the approval of Mark Twain Bank, and
>
> that no such approval was given, or
>
> First, plaintiff was president of J.A. Tobin Construction Company, and
>
> Second, Anderson Construction Company received monies from the Kansas Department of Transportation for work performed by J.A. Tobin Construction Company, and
>
> Third, plaintiff, while employed as president of J.A. Tobin Construction Company, placed his own self-interest above those of J.A. Tobin Construction Company in his exercise of control over the monies mentioned in paragraph second, and
>
> Fourth, that as a direct result of such conduct the defendant was damaged.

MAI 32.01(1) [1978 new] modified Forinash v. Dougherty, [sic] 697 S.W.2d 294 (Mo.App.1985), submitted by defendant.

As previously stated, substantial evidence must be presented entitling a litigant to an instruction. Speculative deductions and conclusions are insufficient to support submission of an instruction. *Titsworth,* 776 S.W.2d at 423. As previously recognized, Tobin failed to prove that it was damaged by Mr. Fitch's conduct, having received full payment for the work it performed at the Nemaha County Project in Kansas.

Additionally, the first portion of the proffered instruction, which attempts to present as a defense the proposed condition precedent of Mark Twain Bank's approval of the memorandum, has also been previously addressed. Tobin's burden to demonstrate that it was entitled to the proffered instruction was not met. The trial court did not err in rejecting Tobin's alternative instruction. Tobin's fifth point is denied.

The judgment is affirmed.

All concur.