Roger FARROW and Leeila Farrow,
Plaintiffs–Appellants,

v.

Jennifer C. POTTS, Defendant–
Respondent.

No. 18895.

Missouri Court of Appeals,
Southern District,
Division Two.

July 22, 1994.

H. Lynn Henry, Henry, Henry & Engelbrecht, P.C., West Plains, for appellants.

Rich D. Moore, Brill, Moore & Wagoner, P.C., West Plains, for respondent.

FLANIGAN, Presiding Judge.

Plaintiffs, the surviving parents of Lisa Farrow, deceased, brought this wrongful death action against defendant Jennifer Potts. Lisa died as a direct result of a collision which occurred on May 24, 1992, on U.S. Highway 17 near Mountain View. The collision involved an Oldsmobile driven by Lisa and a vehicle driven by Charles Hartman, a nonparty. The petition alleged that the collision and death were caused by the negligence of defendant in the operation of a Chevrolet in several particulars, including "defendant was chasing Lisa Farrow and the Farrow vehicle."

The collision occurred on Highway 17 at a point .6 of a mile south of County Road 333. Plaintiffs' evidence included a written statement by defendant that she drove the Chevrolet, in which Valerie Cooper was a passenger, south on Highway 17 and was following the Oldsmobile. The statement said that defendant turned around at County Road 333 and went back to Mountain View. Plaintiffs also introduced another statement given by defendant to the effect that she quit following Lisa and turned around at a point some distance north of County Road 333.

Plaintiffs' evidence showed that, prior to the date of the accident, bad blood existed between Valerie Cooper and Lisa. Jennifer Terrell testified that two or three weeks before the collision she heard Valerie say that she would like to "mess up Lisa's pretty little face" with a broken bottle.

The case was tried to a jury. Instruction 7 was the verdict-directing instruction which the court gave on behalf of plaintiffs. Instruction 8, given on behalf of defendant, submitted the issue of comparative fault on the part of Lisa. The jury returned a verdict assessing percentages of fault as follows: Jennifer C. Potts—0 percent; Lisa Farrow—100 percent. The trial court entered judgment on the verdict in favor of defendant. Plaintiffs appeal.

Plaintiffs' first point is that the trial court erred in giving Instruction 7, and refusing to give Instruction 7A as submitted by plaintiffs, in that Instruction 7 erroneously included the words "at or near the time of her accident," because there was no evidence that defendant was chasing Lisa "at the time" of her accident, and Instruction 7 was an improper statement of the law of proximate cause as the jury did not have to find that defendant was chasing Lisa Farrow "at or near the time of her accident" in order to find for plaintiffs and assess fault to defendant.

The phrase "at or near the time of her accident," contained in Instruction 7, will be referred to as "the challenged phrase." Defense counsel was also not happy with the use of the challenged phrase. Defense counsel tendered, and the trial court refused, Instruction 7B which used the language, "at the time of her accident," in lieu of the challenged phrase.

■ Plaintiffs' first point has not been preserved for appellate review. "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(e).[1] With exceptions not applicable here, Rule 84.13(a) reads, in pertinent part: "[A]llegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Neither Instruction 7 nor Instruction 7A is set forth in full in the argument portion of plaintiffs' brief. This court, in its discretion, has reviewed plaintiffs' first point for possible "plain error" as that term is used in Rule 84.13(c).[2]

---

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R.

**2.** Rule 84.13(c) reads: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest

Instruction 7, given by the trial court, reads:

### "Instruction 7

In your verdict you must assess a percentage of fault to defendant if you believe:

First, defendant was chasing Lisa Farrow at or near the time of her accident, and

Second, defendant was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause the death of Lisa Farrow." [3]

Instruction 7A, tendered by plaintiffs and rejected by the trial court, was the same as Instruction 7, except that Instruction 7A did not have the challenged phrase in paragraph First.

Plaintiffs' evidence included the following:

The accident occurred on Highway 17, 1.7 miles south of Route WW, which is just south of Mountain View. The accident occurred .6 of a mile south of County Road 333. South of Highway WW there is a section of Highway 17 which runs for a little over a mile and is called VanBibber Flats. Just south of VanBibber Flats there is a big dip in the roadway, and then a southbound vehicle crests a hill and the highway is flat again.

Lisa's Oldsmobile left "scuff marks" on the highway which started in the southbound lane and crossed over into the northbound lane. The scuff marks measured 169 feet, 9 inches. Eighty-eight feet south of the south end of the scuff marks, Trooper Hillhouse, of the Highway Patrol, found Lisa lying at the edge of the roadway. Her Oldsmobile was upside down in the roadway, 24 feet south of where Lisa was lying.

On June 3, Defendant told the trooper that she and Valerie had turned around in the area of VanAllmen's Trailer Park, which is north of County Road 333.

At 5:40 p.m. on May 24, Diane Haynes, who was in her yard in Mountain View, saw two cars "zoom by" at a pretty fast clip. The car in the back had some ladies in it and they were hollering at the car ahead of it. They were heading south toward Highway 17.

In the "late afternoon" of May 24, Karen Brooks saw defendant chasing Lisa in Mountain View. Both vehicles were traveling at an excessive rate of speed, heading toward Highway 17 south. The witness saw "finger gesturing. [Defendant] was flipping Lisa off."

In the "late afternoon" of May 24, Russell Brooks and Kenny Brooks were stopped at the junction of WW and Highway 17. Russell Brooks saw Lisa drive by, then he saw defendant and Valerie Cooper chasing Lisa, within 100 feet. They were going over the speed limit. Kenny Brooks said the vehicles were 50 to 75 feet apart and going between 50 and 60 miles an hour, maybe faster.

Immediately prior to the accident, Lori Bales was driving a vehicle south on Highway 17 in front of Lisa's southbound vehicle. When the Bales vehicle got over the dip she met the northbound pickup truck driven by Charles Hartman. Bales glanced in her rearview mirror and saw Lisa's car pop over the hill, half of it on the wrong side of the road. Lisa's vehicle sideswiped Hartman's truck. Lisa was driving considerably too fast—faster than 55. Bales did not see a vehicle following Lisa, "I couldn't because there was that dip there." Defendant came to the scene 15 or 20 minutes after the accident.

Charles Hartman testified that he was traveling north on Highway 17 and saw Lisa's southbound automobile come out of the dip. As it came out of the dip, it veered to its left into Hartman's lane. Hartman went over to the right side as far as he could, and the two vehicles sideswiped. He did not see any vehicles following or chasing Lisa.

---

injustice or miscarriage of justice has resulted therefrom."

**3.** This court's review of Instruction 7 is confined to the challenge made to the instruction by plaintiffs. In rejecting that challenge, this court expresses no opinion on whether Instruction 7 is or is not a correct statement of the law otherwise. Specifically, this court expresses no opinion on whether chasing can be negligent, as distinguished from intentional, conduct.

At 6:03 p.m. Connie Stephenson, ambulance driver, received a call to come to the scene.

Private investigator Hubert Holman interviewed defendant twice. On June 9 defendant stated that she and Valerie turned around at VanAllmen's Trailer Park. On June 10 defendant stated that she turned around at County Road 333.

The principal liability witnesses for defendant were defendant herself and Valerie Cooper. Valerie testified that about 5:30 p.m. on the day of the accident, she was a passenger in defendant's vehicle and saw Lisa in her Oldsmobile. "Lisa yelled, 'You slut,' and I flipped her off. Lisa went down Highway 17 and we followed her out of town. We last saw her at a street called Henry and Henry. We turned around at County Road 333, which is .6 of a mile north of where the accident occurred. We went to a gas station, got gas, and then went to Geneva Neal's house. We were there when the sirens began to blow and the patrol car went out of town. Defendant and I were at Geneva Neal's when the accident occurred. We did not chase Lisa at the time of her accident."

Defendant testified that she followed Lisa out Highway 17. There were two vehicles between Lisa and defendant's vehicle. "We were going about the speed limit. As I passed WW, I didn't see Lisa because there are little bitty hills. I turned around at County Road 333. We came back to Mountain View, got gas, and went to Geneva's house. While Valerie and I were at Geneva's, standing on the porch, I saw Lisa. Geneva said, 'There goes Lisa now.' We could see Lisa and she just drove clear as day down the road. This was after we had followed her out of town. I did not chase Lisa out of town. We had been at Geneva's house 15 minutes when a police car went by with red lights blaring."

In support of their first point, plaintiffs argue: "Clearly, the only issues in the case at bar were, (1) whether the defendant was 'chasing' Lisa Farrow, and (2) whether defendant's conduct directly caused or directly contributed to cause Lisa's death.

.        .        .        .        .

"In requiring the jury to find that defendant chased Lisa Farrow 'at or near' the time of her accident, the court in essence set forth a detailed evidentiary fact, requiring the jury to find in favor of the defendant if defendant was not chasing the decedent at or near the time of her death.

.        .        .        .        .

*"In essence, [Instruction 7] required the jury to find for the defendant if the jury believed the defendant discontinued her chase at County Road 333,* thereby precluding the jury from determining whether defendant's conduct caused or directly contributed to cause Lisa's death. [Instruction 7] also prevented the jury from considering that defendant's chasing caused Lisa Farrow to continue traveling on Highway 17 south of County Road 333. Hubert Holman testified that the area of Highway 17 between County Road 333 and the collision site was very hilly, curvy and that it would be very difficult for the decedent to observe a vehicle following. In essence Lisa had been chased out of town, out past WW Highway, past VonAllmen's Trailer Park and past VanBibber flats and the geography of the roadway during the last half mile she traveled before losing control was such that Lisa could not reasonably know whether she was or was not still being chased. While none of us knows, in all likelihood Lisa thought she was still being chased, had no real opportunity to know otherwise from the terrain and whether or not she was still being chased *at the very time of her death, as included in the court's instruction, was a misstatement of the law of proximate cause.* The misstatement of law in the instruction was prejudicially erroneous because plaintiffs had no eye witnesses who could place defendant's chase all the way up to the crash and by defendant's revised version the chase was abandoned six tenths of a mile back from the point of death.

.        .        .        .        .

"[T]he instruction given by the court was a misstatement of law in that plaintiffs are not required to prove that the chasing occurred all the way up to the time of the accident, or even near the time of the accident, so long as the jury would find that the chasing was a

proximate cause and that the consequences of defendant's chasing should have been reasonably foreseen." (Emphasis added.)

In opposition to plaintiffs' first point, defendant argues:

"When there is more than one occurrence discussed in evidence it is necessary to modify the instructions to limit the jury's consideration to the relevant or injury-producing occurrence for which defendant could be held responsible. *Russell v. Terminal Railroad Ass'n of St. Louis,* 501 S.W.2d 843 (Mo.banc 1973); *Vest v. City National Bank and Trust Company,* 470 S.W.2d 518 (Mo.1971)....

"[T]here was evidence of more than one following or chasing occurrence. Plaintiffs' theory was that defendant was following Lisa Farrow (decedent) at the time of her death, and, even if defendant had broken off the chase, she had done so only one-half mile from the scene of the fatal accident. The transcript does not establish precisely the time of Lisa Farrow's death, but the ambulance received the call at 6:03 p.m. Plaintiffs' witness, Lannie Noble, had seen defendant following decedent in Mountain View around 5:30 p.m. Although not sure of the exact time, Russell Brooks and Kenny Brooks were in a car at the intersection of Highway WW and Highway 17 when they saw defendant following Lisa Farrow. It is approximately 1.7 miles north (sic) of this intersection to the scene of Lisa Farrow's accident. Russell Brooks stated that he proceeded north to town rather than following the other cars, and not long thereafter heard an ambulance....

"Defendant's evidence was that Valerie Cooper, her passenger, and she had seen decedent in town at approximately 5:25 to 5:30 p.m. In an effort to talk with Lisa Farrow, they followed her south on Highway 17 out of Mountain View. They last saw Farrow as she passed the WW Highway exit off of Highway 17. They drove on south and then turned around at the first gravel road out of the city limits of Mountain View and returned to town. Defendant then purchased gas and thereafter went to the home of Geneva Cooper Neal, arriving there about 5:45 p.m. While there at Geneva Neal's house in Mountain View, she saw Lisa Far-row drive past the Neal home. After being at the Neal home for about 15 minutes, she heard ambulance sirens and saw a patrol car go by the home....

"In light of there being evidence of more than one occurrence of following or chasing, it was essential and proper for the court to use the phrase 'at or near the time of the accident' in paragraph one of Instruction No. 7 in order to limit the jury's consideration to any following or chasing by defendant when Lisa Farrow made her second trip out of town, the trip or occurrence that resulted in her fatal accident. Otherwise, under plaintiffs' proposed Instruction No. 7A and the damage instruction, Instruction No. 9, the jury would have been free to rove and bring back a verdict for plaintiffs even if they believed that any chasing had occurred around 5:30 p.m., and that both defendant and Lisa Farrow had thereafter returned to town, defendant had stayed in town, and decedent had made another trip approximately two miles south of town and somehow decedent's state of mind persisting from the first occurrence contributed to her driving that resulted in the fatal accident. Such a scenario, obviously, is not consistent with proximate cause requirements."

The parties agree that there is no Missouri Approved Instruction applicable to the issues in this case which could be used as plaintiffs' verdict-director. "[W]here there is no applicable MAI so that an instruction not in MAI must be given, then such ... [instruction] shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b).

In determining the legal sufficiency of an instruction, when not using an MAI form, the court should not be hyper-technical in requiring grammatical perfection, the use of certain words or phrases or any particular arrangement or form of language, but should be concerned with the meaning of the instruction to a jury of ordinarily intelligent laymen. *Wims v. Bi–State Development Agency,* 484 S.W.2d 323, 325[3] (Mo.banc 1972). "[J]uries are composed of ordinarily intelligent persons who should be credited

with having common sense and an average understanding of our language." *Id.*

Plaintiffs submitted evidence showing two versions of the events leading up to the accident:

Version 1: Defendant and Valerie chased Lisa on Lisa's last trip south out of Mountain View on Highway 17. A statement by defendant showed defendant admitted chasing Lisa but ended the chase when defendant turned around at County Road 333, .6 of a mile north of the scene.

Version 2: Same as Version 1 except that defendant, in an earlier statement, said that she turned around at VanAllmen's Trailer Park, some distance north of County Road 333. This version, arguably, was less favorable to plaintiffs than Version 1. Plaintiffs showed this version to demonstrate that defendant had given conflicting statements.

Defendant submitted evidence showing a third version of the events leading up to the accident:

Version 3: Although defendant and Valerie chased Lisa at about 5:30 p.m. on May 24, they discontinued their chase at County Road 333, went to a gas station, and then went to Geneva Neal's house. While they were there, defendant saw Lisa drive by, headed toward the scene of the collision. That was Lisa's final trip out of Mountain View, and defendant was not involved in that trip.

The challenged phrase, "at or near the time of her accident," refers to time rather than location. This court rejects plaintiffs' argument that the challenged phrase required the jury to find for defendant if the jury believed that defendant discontinued her chase at County Road 333. If Version 1 was the true situation, Version 1 would satisfy the challenged phrase, and so would Version 2. This court also rejects plaintiffs' argument that Instruction 7 would not permit recovery unless Lisa was being chased "at the very time of her death." The challenged phrase does not say so, and the court refused to give Instruction 7B, tendered by defendant, which was to that effect.

Plaintiffs offered no direct evidence that defendant's vehicle was at any time prior to

the accident on the portion of Highway 17 which was south of County Road 333 or, in other words, was within .6 of a mile of the collision. Plaintiffs' evidence did show, however, that the collision occurred very shortly after plaintiffs' witnesses saw defendant's vehicle chasing Lisa. Under the challenged phrase, the jury could find that the chasing took place "near the time of the accident," even if defendant discontinued the chase at County Road 333 or at some place north of it.

Plaintiffs' evidence was that immediately prior to the collision Lisa's speed exceeded 55 miles per hour. At that speed it would not have taken Lisa many seconds to traverse the .6 of a mile between County Road 333 and the scene. If the jury believed plaintiffs' evidence and the reasonable inferences flowing therefrom, to the effect that the chasing and collision were very close in time, less than a minute apart, and believed the other findings required by Instruction 7, that instruction required a verdict in plaintiffs' favor under either Version 1 or Version 2.

If the jury believed Version 3, that belief would be inconsistent with the facts hypothesized by paragraph First of Instruction 7. Plaintiffs have made no claim that they were entitled to a directed verdict on the issue of liability on the basis of Version 3 which, in effect, was inconsistent with plaintiffs' two versions.

■ This court holds that Instruction 7, as understood by reasonable jurors, properly summarized plaintiffs' evidence and submitted both Version 1 and Version 2 simply, briefly and impartially. With respect to plaintiffs' criticism of Instruction 7, the trial court did not commit plain error in giving Instruction 7 and in refusing to give Instruction 7A, as tendered by plaintiffs. Plaintiffs' first point has no merit.

Plaintiffs' second point is that the trial court erred in giving Instruction 8, which was tendered by defendant and submitted the issue of Lisa's comparative fault, because there was no evidence to support those portions of Instruction 8 which hypothesized negligence on the part of Lisa.

The verdict of the jury assessed 100 percent of fault to Lisa and zero percent to defendant.

In *Vasseghi v. McNutt,* 811 S.W.2d 453 (Mo.App.1991), the jury returned a verdict assessing 100 percent of the fault against plaintiff and zero percent against defendant. On plaintiff's appeal, plaintiff argued that the trial court erred in submitting, on behalf of the defendant, an instruction allowing the jury to assess a percentage of fault to plaintiff. Rejecting that contention, the court said, at 455[1]:

"It is not necessary to reach the issue of whether there was a sufficient evidentiary basis for submission of the comparative fault instruction. Under Missouri's comparative negligence doctrine, error in giving a comparative fault instruction is harmless when the jury apportions no percentage of fault to defendant. *Mino v. Porter Roofing Co., Inc.,* 785 S.W.2d 558, 562 (Mo.App.1990); *Hyman v. Robinson,* 713 S.W.2d 300, 301 (Mo.App. 1986)."

Other cases consistent with the holding in *Vasseghi* include *Wilson v. Shanks,* 785 S.W.2d 282, 284–285[1] (Mo. banc 1990); *Lee v. Mirbaha,* 722 S.W.2d 80, 83–84[1] (Mo. banc 1986); *Barnes v. Tools & Machinery Builders, Inc.,* 715 S.W.2d 518, 520–522[1–3] (Mo. banc 1986); *Woodiel v. Barclay Enterprises, Inc.,* 858 S.W.2d 247, 254[10] (Mo. App.1993); *Hawk v. Union Elec. Co.,* 798 S.W.2d 173, 175[3] (Mo.App.1990); *Titsworth v. Powell,* 776 S.W.2d 416, 423[19] (Mo.App. 1989). As said in *Titsworth,* "Here, the jury found appellant's fault to be 100 percent and respondents' fault to be 0 percent. Basically, this amounts to a general verdict for the respondents. Thus, appellant was not prejudiced by any alleged error in the comparative fault instruction."

Plaintiffs' second point has no merit.

The judgment is affirmed.

CROW and GARRISON, JJ., concur.