STATE of Missouri, Respondent,

v.

Roger BLAKEBURN, Appellant.

No. WD 47017.

Missouri Court of Appeals, Western District.

July 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

County, Missouri, of the Class A misdemeanor of tampering with a witness in violation of section 575.270, RSMo 1986.[1]

The facts leading up to this appeal are as follows: Blakeburn had been charged with theft of cable services by the City of Kirksville in March of 1992. He was arraigned on March 17, 1992 and the case was ultimately tried on May 26, 1992. Plaintiff in the case was the City of Kirksville. Prior to that trial date, subpoenas were issued for three witnesses for the City, Martin Stitzer, Virginia Childers, and Bobby Garrett. The subpoenas were first issued on April 7, 1992 and then were reissued for Garrett and Childers on April 21, 1992.

Childers testified, at the trial for the case at bar, that late in the evening on April 24, 1992, she and her friends, Bobby Garrett and Lori Perkins, arrived at a bar in Kirksville, Missouri, called Spanky's. Blakeburn came into Spanky's at approximately 12:30 a.m. Upon coming out of the bathroom at Spanky's, Childers noticed Blakeburn standing at her table "mouthing" Garrett. When she walked over to the table, Blakeburn "started in on" her. According to Childers' testimony, Blakeburn said to her, "You better not testify against me for hooking your mom's cable up." Blakeburn also told her that if she testified that he would kill her or beat her up. She said that he was mad when he said these words and that he slammed his beer can down on the table.

Childers further testified that after Blakeburn said this to her, the bartender, Glen Cassidy, came over to their table and told Blakeburn that if he did not calm down, he was going to have to leave. After Cassidy left, Childers said that Blakeburn kept threatening her by saying that he was going to beat her up. Childers stated that even though she was scared of Blakeburn, she testified against him anyway.

Blakeburn claimed that on the night of April 24, 1992, he was working at another bar in Kirksville, approximately 2½ miles from Spanky's. Blakeburn testified that

Jeffrey M. Estes, Public Defender, Kirksville, for appellant.

Tom Hensley, Pros. Atty., Adair County, Kirksville, for respondent.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

Appellant, Roger Blakeburn, appeals his conviction in the Circuit Court of Adair

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

he did not leave work until two o'clock in the morning. He denied going to Spanky's that evening and denied threatening Childers.

Blakeburn was charged by information on May 13, 1992 of committing the Class A misdemeanor of tampering with a witness. The information was amended merely to endorse State's witnesses thereon.

A jury trial took place on September 28, 1992. The jury found Blakeburn guilty of tampering with a witness and assessed punishment at 90 days imprisonment in the county jail and a fine to be determined by the court.

On October 1, 1992, Blakeburn filed a Motion for Judgment of Acquittal Notwithstanding the Verdict or, in the alternative, a New Trial. On October 14, 1992, the trial court overruled Blakeburn's motion and sentenced Blakeburn to 90 days imprisonment. This appeal followed.

In his first and second points on appeal, which will be considered together because they are so similar, appellant argues that the trial court erred in failing to declare a mistrial (Point II), or failing to take any action (Point I), when the prosecutor misstated the law regarding the presumption of innocence during closing argument. Appellant argues that the court should have sustained the objection to the prosecutor's remark, instructed the jury to disregard the remark, and given a curative instruction to the jury properly instructing the jury in the law. Appellant contends that the prosecutor's remark, which led the jury to believe that appellant was no longer presumed innocent once the jury began their deliberations, was prejudicial and violated appellant's due process rights.

■ The declaration of a mistrial is a drastic remedy, and this power should only be exercised in extraordinary circumstances. *State v. Sloan*, 786 S.W.2d 919, 922 (Mo.App.1990). The trial court is in a better position than an appellate court to evaluate the prejudicial effect, if any, on the jury of the incident in question. *Id.* Thus, in determining whether to grant a mistrial, the trial court has broad discretion and will be reversed only for an abuse of

that discretion. *State v. Roberts*, 779 S.W.2d 576, 579 (Mo. banc 1989).

■ The trial court is in the best position to appraise the consequence of a closing argument, and has broad discretion to determine if the particular line of argument is proper. *Titsworth v. Powell*, 776 S.W.2d 416, 420 (Mo.App.1989). The appellate court may intervene only if it concludes that the trial court has abused its discretion. *Id.*

■ Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments. *Id.* at 422. However, it is equally recognized that the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments. *Id.* at 422. In ruling on the propriety of the closing argument, the challenged comment must be interpreted in light of the entire record rather than in isolation. *Id.* at 422.

■ It is presumed that the jury will properly follow the instructions as given. *State v. Preston*, 673 S.W.2d 1, 7 (Mo. banc), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). In *State v. Gilbert*, 636 S.W.2d 940, 944 (Mo. banc 1982), the Missouri Supreme Court found that no prejudicial error resulted from the trial court's overruling defendant's objection to the prosecutor's alleged misstatement of the law concerning entrapment during closing argument. The court characterized the prosecutor's alleged improper comments as "a discussion of defendant's claim of entrapment." *Id.* The court went on to state:

Additionally, the prosecutor followed his comments by reading the definition of entrapment contained in the verdict director and in the converse instructions. And at other points during closing argument, the prosecutor accurately reiterated a number of the basic elements of

entrapment. Thus, we find no prejudicial error resulted from overruling defendant's objection to the argument. *Id.*

In *State v. Thomas,* 820 S.W.2d 538, 543 (Mo.App.1991), the defendant claimed that the prosecutor's repeated references to him as "this murderer," made during closing argument, violated the presumption of innocence and was unduly prejudicial. The court rejected the defendant's claim that the prosecutor completely ignored the presumption of innocence, and explained that the prosecutor followed his allegedly improper comments with the statement that the defendant was presumed innocent. *Id.* Furthermore, the jury was instructed that the defendant is presumed innocent unless and until, during deliberations, the jury finds him guilty. *Id.* The court found that, by virtue of the corrective statements made by the prosecutor and the jury instruction that was given, no prejudice occurred. *Id.* While the prosecutor's comments were not necessary or entirely proper, they were not grounds for reversal. *Id.*

In the case at bar, instructions were read to the jury before closing arguments, including Instruction Number 4, modeled after MAI–CR3d 302.04, which states, in relevant part, that the "defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty." During closing argument the prosecutor made the following statement:

And we talked about the presumption of innocence. The man is presumed innocent until you begin deliberations, and then that presumption is then gone.

Defense counsel immediately objected to this statement as a misstatement of the law. Defense counsel then approached the bench, arguing that the presumption of innocence is with the defendant until the jury finds him guilty beyond a reasonable doubt, and requested a mistrial. The court sustained defense counsel's objection, but overruled his motion for a mistrial. The prosecutor then continued his closing argument by reading Instruction Number 4, as stated above, to the jury.

Just prior to making his allegedly improper comment, the prosecutor said to the jury, "There will be two instructions that I'd like you to look at when you go back there. Instruction No. 4 the Judge read to you, two things about that. One, the Defendant is presumed innocent. And I think we talked about this in voir dire.... And we talked about the presumption of innocence." The prosecutor then went on to make the statement of which appellant complains.

■ Viewing the comment in light of the entire record, we find that the trial court did not abuse its discretion in overruling appellant's motion for a mistrial. While the comment in isolation was an inaccurate statement of the law, we find that no prejudice resulted due to the fact that the prosecutor, after making the comment, read the instruction to the jury which contained a correct statement of the law. Also, the prosecutor, just prior to making the inaccurate statement, stated that the defendant is presumed innocent and referred the jury to Instruction Number 4. Because of the prosecutor's corrective statements, no prejudice occurred. Moreover, the jury is presumed to follow the instructions as given.

As to appellant's contention that if the court did not grant a mistrial it should have given a curative instruction, we first note that the only relief that appellant requested was a mistrial. Appellant requested no other relief. We do not find that the drastic remedy of a mistrial is warranted in this case. Furthermore, the prosecutor gave a corrective statement after making the comment in question. As previously stated, the trial court did not abuse its discretion.

Appellant's first two points are denied.

In his third point on appeal, appellant argues that the trial court erred in sustaining the prosecutor's relevance objection to the document that was to be used by defense counsel to impeach the complaining witness, Childers. Appellant further contends that the trial court erred in rejecting appellant's offer of proof, in violation of appellant's right to confront the witnesses against him. Appellant alleges that the affidavits offered by defense counsel would

have shown that Childers had previously lied to the police.

 Appellant's point is without merit. Allegations of error will not be considered on appeal unless they were presented to or expressly decided by the trial court. *State v. Toney*, 680 S.W.2d 268, 275 (Mo.App.1984); Rule 84.13(a). Allegations unsupported by the record cannot be the basis of error. *State v. Carr*, 687 S.W.2d 606, 611 (Mo.App.1985). In other words, there can be no error unless evidence or testimony is offered by a party on the record and then refused by the trial court. When an objection to the proffered evidence is sustained, the offering party must show its relevancy and materiality by way of an offer of proof in order to preserve the issue for appellate review. *State v. Foulk*, 725 S.W.2d 56, 66 (Mo.App.1987). The offer of proof must show what evidence will be given, the purpose and object of the evidence sought to be introduced, and all of the facts necessary to establish the admissibility of the evidence in sufficient detail to demonstrate its relevancy and materiality. *Id.*

During the trial in the case at bar, the following colloquy occurred during defense counsel's cross-examination of Childers:

Q [defense counsel]: I'd like to hand you now what's been marked Defendant's Exhibit 1, and I'd like to ask you if you can tell me if that's your signature there on the front page?

A [Childers]: Yes, it is.

Q: Okay. You filed charges against—

THE COURT: Just—Excuse me. She marked it as "A" rather than "1." It's Exhibit—

MR. ESTES [defense counsel]: Okay. For the record then—

THE COURT: Exhibit A. Yeah.

Q: Exhibit A. Okay. That is your signature?

A: Yes.

Q: You did file charges against one Danny (Inaudible) and another person?

MR. HENSLEY [prosecutor]: Judge, I'd object. It's irrelevant, immaterial.

THE COURT: Charges on—

MR. HENSLEY: Judge, I see no relevance in this—

MR. ESTES: May we approach?

THE COURT: Okay. Yeah. Why don't you approach the bench?

(Counsel approached the bench, and the following proceedings were had:)

THE CLERK: You want this on the record?

THE COURT: Yes. (Inaudible) charges on this case?

MR. ESTES: Huh?

THE COURT: Charges on the cable TV—

MR. ESTES: She—

THE COURT: —or something different?

MR. HENSLEY: Judge—(Inaudible). She's (Inaudible) about the person that she lied when she filed these charges.

MR. ESTES: I'd like to make an offer of proof—

THE COURT: All right.

MR. ESTES: —outside the hearing of the jury.

THE COURT: Okay.

MR. HENSLEY: (Inaudible).

THE COURT: Okay. Why don't I do that. Okay.

(Proceedings returned to open court.)

THE COURT: All right. We're going to have a brief recess while I take up some matters with the attorneys....

\* \* \* \* \* \*

MR. ESTES: —what's been marked State's—Defendant's Exhibit A—(Inaudible).

MR. HENSLEY: Wait a minute. Judge, could we, just for the record, delineate that this is part of the offer of proof that the jury is now excused from the courtroom, and that—and will not reflect any of the evidence to the trial today.

THE COURT: All right. Yeah. I think that's correct. This is an offer of proof, and the jury is now outside the courtroom. Okay. Mr. Estes.

MR. ESTES: Thank you, Your Honor. Okay.

Q [Mr. Estes]: Now, you filed charges against Danny (Inaudible) and who else was on there?

A [Childers]: Charles Childers.

Q: Charles Childers. Okay. And then you told Eugene Hatfield that you had lied about those charges; is that correct?

A: No. Eugene Hatfield is my cousin, and I don't talk to him.

Q: Okay. But you decided to dismiss the charges?

A: That's because me and my husband got back together.

MR. ESTES: No further questions.

\* \* \* \* \* \*

MR. HENSLEY: Does this then end the offer of proof, Jeff?

MR. ESTES: Yes.

THE COURT: Okay.

Defense counsel then began a new line of questioning and did not return to the exhibit or to the allegations that Childers made a false statement to the police regarding other charges in the past. ·

Defense Exhibit A, although marked, was never received into evidence. Furthermore, the record does not indicate that the judge ever made a ruling on the prosecutor's relevance objection. Finally, the offer of proof failed to state specific and sufficient facts to establish the admissibility of the evidence proffered.

Because appellant's allegations were not expressly decided by or ruled upon by the trial court, we will not consider them on appeal. Furthermore, because appellant's offer of proof was insufficient, the point has not been preserved for review.

Appellant's third point is denied.

In his fourth point on appeal, appellant argues that the trial court erred in admitting the municipal court records pertaining to the City of Kirksville's case against Blakeburn for theft of cable services (State's Exhibit No. 1), because the proper foundation had not been laid. Appellant contends that said municipal court records were hearsay.

We first note the relevance of the municipal court records pertaining to the theft action brought against Blakeburn. Among the elements of the crime of tampering with a witness is that the defendant acted with a purpose to induce a witness or a prospective witness *in an official proceeding* not to testify. *See* § 575.270.1. Thus, the prosecutor sought to have the municipal court records of the official proceeding in question admitted in order to prove this element of the crime.

The trial judge is given wide latitude in ruling on whether to admit or exclude evidence, and absent a clear abuse of discretion, the appellate court will not interfere with that ruling. *State v. Reed*, 816 S.W.2d 919, 923 (Mo.App.1991). It is only when the trial court's ruling on admissibility of evidence clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable that the appellate court will find an abuse of discretion. *State v. Jack*, 813 S.W.2d 57, 60 (Mo.App. 1991). Furthermore, the determination of whether a sufficient foundation was laid for admission of the evidence is within the sound discretion of the trial court. *Hayes v. Hudson Foods, Inc.*, 818 S.W.2d 296, 301 (Mo.App.1991).

It has long been the law in Missouri that a record kept or prepared by a person whose public duty it is to record the facts stated in the document is admissible as evidence of such facts. *Phillips v. Board of Adjustment*, 308 S.W.2d 765, 768 (Mo.App.1958); *State v. Weber*, 814 S.W.2d 298, 302 (Mo.App.1991). Where no formal manner of keeping or attesting such records is prescribed by statute, the records are competent evidence when a foundation for their admission is laid by the clerk's testimony that they are the records which they purport to be and were prepared by the clerk in the performance of the clerk's official duty. *Phillips*, 308 S.W.2d at 768. This "official records" or "public documents" exception is an exception to the hearsay rule. *Weber*, 814 S.W.2d at 302.

In the case at bar, Cheryl Behrmann, the municipal court clerk for the City of Kirksville, testified that: (1) her general duties are custodian of all the court records

for the municipal cases for the city; (2) she sits with the judge when the judge hears the cases and makes entries concerning the cases at the time the action is taking place in the courtroom; (3) she later transcribes the entries into the court file; (4) she was familiar with the City of Kirksville's case against Blakeburn; and (5) she recognized the certified copy of the case file for Blakeburn (State's Exhibit No. 1). Ms. Behrmann also testified to the contents of the case file. Based on the record before us, we find that a proper foundation was laid for the evidence in question and it was properly admitted into evidence. The trial court did not abuse its discretion in admitting the municipal court records into evidence.

Appellant's fourth point is denied.

In his fifth point on appeal, appellant argues that the trial court erred in overruling appellant's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence because the State failed to make a submissible case. Specifically, appellant contends that the State failed to prove that appellant had a purpose to prevent Childers from testifying and also failed to prove the "official proceeding" element.

Section 575.270.1 provides:

A person commits the crime of "tampering with a witness" if, with purpose to induce a witness or a prospective witness in an official proceeding to disobey a subpoena or other legal process, or to absent himself or avoid subpoena or other legal process, or to withhold evidence, information or documents, or to testify falsely, he:

(1) Threatens or causes harm to any person or property; or

(2) Uses force, threats or deception; or

(3) Offers, confers or agrees to confer any benefit, direct or indirect, upon such witness; or

(4) Conveys any of the foregoing to another in furtherance of a conspiracy.

■■■ When determining whether the State made a submissible case, this court must view the evidence in the light most favorable to the verdict, and the State is afforded all reasonable inferences from that evidence. *State v. Thomas*, 820 S.W.2d 538, 544 (Mo.App.1991). This being established, we find that the evidence adduced was sufficient to prove that Blakeburn had a purpose to prevent Childers from testifying and that the "official proceeding" element has been proven by the State's submission of Exhibit Number 1, as described above in Point Four.

Testimony of Childers, Perkins, and Cassidy revealed that Blakeburn came into Spanky's bar and threatened Childers not to testify against him, establishing that Blakeburn had a purpose to induce Childers not to testify against him. The State made a submissible case.

Appellant's fifth point is denied.

In his final point on appeal, appellant argues that the trial court erred in overruling his motion to strike jurors Kiger, Buckner, and Parsons for cause in that appellant was denied his right to a fully qualified panel from which to make his preemptive strikes.

Specifically, appellant contends that juror Kiger should have been excluded for cause because he stated in voir dire that he "preached hard against drinking," inferring that he could not impartially listen to all of appellant's witnesses because they were drinking in a bar. Appellant further contends that juror Buckner should have been excluded for cause because he testified on voir dire that he was confused about the presumption of innocence, which gave rise to a duty on the trial court's part to conduct an independent inquiry of juror Buckner. Finally, appellant contends that juror Parsons should have been excluded for cause because he had a hearing problem.

■■■ The trial court has broad discretion in determining the qualifications of prospective jurors and its decision on a challenge for cause will not be overturned absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Six*, 805 S.W.2d 159, 165 (Mo. banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). While a

review of a trial court's decision is more searching where the trial court does not independently interview the prospective jurors, a trial judge has no duty to question further a juror when the answers given show no bias and where the prospective juror unequivocally pledges to give the defendant a fair trial. *State v. Williams*, 721 S.W.2d 102, 105 (Mo.App.1986). The critical question in determining the objectivity of a potential juror is whether the juror has been equivocal or unequivocal in answering questions about his impartiality. *Id.* at 105–06. This determination is made on the basis of the entire examination. *Id.* at 106.

In *State v. Jurdan*, 813 S.W.2d 358, 359–60 (Mo.App.1991), the court stated that while a defendant is entitled to a full panel of qualified jurors before being required to make peremptory challenges, the trial court did not abuse its discretion in denying defendant's challenge for cause with regard to a prospective juror who testified on voir dire that he believed that excessive alcohol is scripturally wrong. The prospective juror in *Jurdan*, after stating his belief about excessive alcohol, further stated that he would weigh the evidence and would have an open mind. *Id.* at 360. The charge in *Jurdan* was a driving while intoxicated charge. *Id.* at 358.

In *State v. O'Neal*, 718 S.W.2d 498, 502 (Mo. banc 1986), *cert. denied*, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987), the court found that the trial court did not abuse its discretion in failing to strike for cause a prospective juror with a hearing problem. The court found that the trial court could refuse to strike for cause a prospective juror with a hearing problem where, after questioning, the trial court was satisfied that the hearing problem would not interfere with the juror's ability to sit as a juror. *Id.*

■ In the case at bar, juror Kiger testified as follows on voir dire:

MR. ESTES [defense counsel]: I—my evidence is going to be that Roger was not at Spanky's, but at the Cuckoo's Nest, a different bar. So, some of my witnesses will have been drinking because they were in a bar. Is there anyone here that would disbelieve what a witness would say just because they had been drinking? Yes, sir. Your name, please.

MR. KIGER: Glenn Kiger.

MR. ESTES: Okay.

MR. KIGER: I am a minister, and I do hit awful hard on drinking. I want that understood right now. I preach hard against drinking.

MR. ESTES: Okay.

MR. KIGER: I want that fact to be brought out (Inaudible).

MR. ESTES: Okay. Do your feelings about drinking, would that influence how you'd listen to the witnesses that were in a bar?

MR. KIGER: I don't think so because when I said I don't think so, because I like to feel that a person's character is good enough that they would tell the truth. I mean, that's my thinking on a religious line that a person should always tell the truth.

Based on the above colloquy, we find that the trial court did not abuse its discretion in refusing to strike for cause juror Kiger. His testimony on voir dire indicates that he would not be biased and that he would give the defendant a fair trial. Even though Kiger stated that he "preach[ed] hard against drinking," he also stated that this would not influence how he would listen to the witnesses that were in a bar.

■ As to juror Buckner, he testified on voir dire, in response to questions about the presumption of innocence, as follows:

MR. BUCKNER: Would you repeat the question as you stated it before?

MR. ESTES: Sure. I'm talking about the presumption of innocence. And the way I'm trying to find out about how people feel is if they think he wouldn't be here if he hadn't done something.

MR. BUCKNER: Well, and stated that way, are you asking me whether I believe that it was a circumstance where he, or at least—circumstances that place somebody in a situation—to be presumed to be accused of something?

I mean, like, I don't know this case at all. I'm just wondering if you're—in fact,

you want me to believe the person wasn't even in the vicinity of the—situation or crime, whatever it happens to be?

MR. ESTES: Uh-huh. Well—

MR. BUCKNER: (Inaudible).

MR. ESTES: Go ahead. Finish your question.

MR. BUCKNER: I'm just—I'm just—Well, like, the way you state the question, I'm just confused as to what you're asking my belief to be here.

MR. ESTES: Okay. Well, the law says every one is presumed to be innocent. And however he got here, whatever the police had, whatever the prosecutor thought he had, that, it's just not before you. You have to presume he's innocent until, I guess, the prosecutor takes everything that he thinks he has and presents it to you and proves beyond a reasonable doubt. Okay? I'm not talking—I'm really not talking about whether or not you presume him to be innocent.

MR. BUCKNER: Well, that I can answer, "Yes," I presume the person innocent.

Based on the above colloquy, we find that the trial court did not abuse its discretion in refusing to strike for cause juror Buckner, who unequivocally stated that he "presume[d] the person innocent." Despite his initial confusion, Buckner was able to provide a clear answer to defense counsel's questions regarding the presumption of innocence, showing that he was capable of giving the defendant a fair trial.

 Juror Parsons, who responded on voir dire to defense counsel's questions about hearing problems, stated as follows:

MR. ESTES: Have you been able to hear everything we've been saying?

MR. PARSONS: There were some names that I had to—I have to concentrate to hear what everybody says.

MR. ESTES: Okay.

MR. PARSONS: Somebody—If you're standing in front of a witness, and I can't—They start to talk, and I don't know what they're talking, I might not catch what they said.

MR. ESTES: Sure. Sure. So, if I approach a witness then, and we talk, oh,

this far apart, you're going to have problems?

MR. PARSONS: If he's not talking very loud, that would mean I'd have to concentrate, you know.

MR. ESTES: Okay.

MR. PARSONS: Make sure I know you're talking, or somebody is talking.

MR. ESTES: Okay. What if a couple of people are talking at once?

MR. PARSONS: That usually don't bother me.

The trial court did not abuse its discretion in refusing to strike juror Parsons for cause. The judge was apparently satisfied that the hearing problem of juror Parsons would not interfere with his ability to sit as a juror.

The judgment is affirmed.

All concur.