**STATE of Missouri, Respondent,**

v.

**William J. McBANE, III, Appellant.**

**No. WD 49403.**

Missouri Court of Appeals,
Western District.

July 25, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Ronald R. Holliday, St. Joseph, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., and
BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

William J. McBane, III, appeals from convictions of assault in the first degree, § 565.050, RSMo1994; kidnapping, § 565.110, RSMo1994; rape, § 566.030, RSMo Cum.Supp.1992; sodomy, § 566.060, RSMo Cum.Supp.1993; and three counts of armed criminal action, § 571.015, RSMo1994. He now appeals, claiming that the trial court erred by failing to follow the statutory procedure for determining his competence to stand trial, and by failing to *sua sponte* conduct a second competency hearing.

The judgment of the trial court is affirmed.

After being charged with the above offenses, which stemmed from a brutal attack on his former mother-in-law, Mr. McBane filed notice of his intent to rely on the defense of nonresponsibility as a result of mental disease or defect. Accordingly, Mr. McBane asked the trial court to order a mental examination pursuant to § 552.020.4, RSMo1986.[1] In granting the motion, the trial court concluded that there was reasonable cause to believe that Mr. McBane was not mentally fit to proceed with the case. The trial court ordered the mental examination to include an opinion as to whether Mr. McBane had the capacity to understand the proceedings against him or to assist in his own defense, and as to whether, at the time of the offense, Mr. McBane knew or appreciated the nature, quality, or wrongfulness of

---

1. All references to § 552.020 are to Revised Missouri Statutes 1986, unless otherwise indicated.

his conduct, or was capable of conforming his conduct to the requirements of the law.

A mental examination was performed by Dr. Bruce Harry, staff psychiatrist at the Fulton State Hospital. In his September 25, 1992 report, Dr. Harry concluded that

Mr. McBane currently has a mental disease or defect and suffered from a mental disease or defect at the time of the present offense.... Mr. McBane has the mental capacity to understand the proceedings against him but is unable to assist his attorney in his own defense. This examiner is unable to give an opinion within a reasonable degree of medical certainty whether Mr. McBane, at the time of the crime, had the mental capacity to know or appreciate the nature, quality, or wrongfulness of his conduct, or was capable of conforming his conduct to the requirements of the law.

Following this incomplete evaluation, Mr. McBane filed a motion seeking a more definite determination of his mental capacity at the time of the charged offenses, or in the alternative, a second mental examination. In a follow-up report dated March 22, 1993, Dr. Harry made the following conclusions:

It is the opinion of this examiner to a reasonable degree of medical certainty that Mr. McBane currently has a mental disease or defect and suffered from the mental disease or defect at the time of the present offense. This examiner opines to a reasonable degree of medical certainty that Mr. McBane now has the mental capacity to understand the proceedings against him and is capable of assisting his attorney in his own defense. This examiner believes that Mr. McBane probably would not have been involved in the present offenses had he not been severely mentally ill at that time. However, careful analysis of the offense leads this examiner to opine to a reasonable degree of medical certainty that Mr. McBane at the time of the crime, had the mental capacity to know or appreciate the nature, quality, or wrongfulness of his conduct, and was capable of conforming his conduct to the requirements of the law.

In his report, Dr. Harry indicated that his changed opinion regarding Mr. McBane's competence to stand trial was attributable to an improvement, after treatment, in Mr. McBane's clinical condition since the time of Dr. Harry's earlier evaluation.

Mr. McBane then filed a motion for a second mental examination, which was granted by the trial court. In a report dated September 28, 1993, Stephen A. Mandracchia, Ph.D., made the following conclusions about Mr. McBane's mental condition:

In the opinion of the examiner the accused, as a result of mental disease or defect, lacks capacity to assist in his own defense.

.    .    .    .    .

In the opinion of the examiner, at the time of the alleged criminal offenses the accused was suffering from mental disease or defect, specifically Major Depression with Psychotic Features, which substantially impaired his capacity to know and appreciate the nature, quality or wrongfulness of his actions, and which rendered him incapable of conforming his conduct to the requirements of the law.

In light of the conflicting reports filed by Dr. Harry and Dr. Mandracchia, Mr. McBane filed a motion for a hearing to resolve the issue of his competence to stand trial. Both Dr. Harry and Dr. Mandracchia testified at the hearing, which was held on November 22, 1993. Dr. Harry stated that, because he had not examined Mr. McBane since the follow-up evaluation, he did not have an opinion about Mr. McBane's current capacity to proceed with the trial. As a result of Dr. Harry's lack of an opinion about Mr. McBane's current capacity, and because Dr. Mandracchia's opinion was the more recent of the two, the trial court concluded that Mr. McBane was not, at that time, competent to stand trial.

However, in communicating this decision to the parties at the close of the hearing, the trial court also indicated that it was going to order the Fulton State Hospital to examine Mr. McBane once more for the sole purpose of determining his competence to proceed, and to provide a report of the examination within sixty days. There was no objection to

the trial court's plan; on the contrary, the following dialogue ensued:

[DEFENSE COUNSEL]: Judge, I think really at this point the best thing to do would probably be to have another exam ordered strictly as to competency.

[THE COURT]: All right. And the statute talks about six months, but I am not going to wait six months. If he is competent to proceed, let's go ahead and get this thing going. If he's not competent to proceed, then we're going to be faced with that situation; either it's going to be they've found additional evidence or we're going to have to wait until he is treated.

.  .  .  .  .

And until I am comfortable and until I have heard from the doctors to testify that he is competent to proceed to trial, then I am not going to order the case set for trial.

[DEFENSE COUNSEL]: I think 60 days should be sufficient since we're only asking for just this one determination and not a full exam.

At the direction of the trial court, the Fulton State Hospital proceeded with another mental examination of Mr. McBane. In a report dated December 19, 1993, Richard N. Gowdy, Ph.D., and J.C. Peters, D.O., offered the following conclusions:

The accused does suffer from a mental disease, Major Depression, which is now in partial remission, according to Chapter 552 RSMo.

The defendant has the capacity to understand the proceedings against him and the nature of the judicial process and would be able to assist his attorney in his defense.

It is recommended that the defendant be psychiatrically hospitalized for treatment pending the court's determination of the issue of mental fitness to proceed until discharged by his treating physician.

At a pre-trial hearing on January 27, 1994, the trial court informed the parties that it had received the December 19, 1993 report finding Mr. McBane competent to proceed. The trial court further informed the parties that, based upon the report, it was going to proceed and set the matter for trial. The

relevant portion of the hearing transcript is quoted below:

THE COURT: State of Missouri versus William J. McBane. Mr. McBane is not present. He is still in the Fulton State Hospital.

I have received recently an evaluation. I assume both attorneys have received a copy of that; is that correct?

[PROSECUTOR]: I have.

[DEFENSE COUNSEL]: Judge, my office has it. My secretary read the pertinent parts to me over the phone. I have not had a chance to read it. I understand they are finding him competent to proceed.

THE COURT: Yes. So at this time the Court is going to proceed and set the matter for trial. Is there anything we need to take up before we set the matter for trial?

[PROSECUTOR]: I have nothing, your Honor.

[DEFENSE COUNSEL]: I have nothing Judge. Are we intending to set this for February or go to March?

The trial took place on March 23–24, 1994, and Mr. McBane was convicted on all counts. He was sentenced to a total of three life sentences plus sixty-five years in the Missouri Department of Corrections.

■ In his first point on appeal, Mr. McBane claims that the trial court erred by failing to follow the relevant statutory procedure following the November 22, 1993 hearing in which the trial court found that Mr. McBane was not competent to stand trial. Specifically, Mr. McBane contends that the trial court violated the procedural requirements imposed by §§ 552.020.8, .9, and .10 by failing to immediately suspend the criminal proceedings, by ordering a new mental examination, by failing to commit Mr. McBane to the Department of Mental Health, by setting the case for trial, and by failing to allow six months to elapse prior to ordering a new mental examination.

Mr. McBane, however, made no objection to the trial court about the procedure it adopted in the case at bar, and allegations of error will not be considered on appeal unless they were raised at the trial court level.

*State v. Blakeburn,* 859 S.W.2d 170, 176 (Mo. App.1993). Not only was no objection made to the procedure adopted by the trial court, Mr. McBane's counsel expressly concurred in the appropriateness of the proposed course of action. As opposed to a simple failure to object, which may warrant plain error review, here there was an affirmative waiver of an allegation of error, and thus the matter will not be considered under the plain error doctrine. *See State v. Scott,* 858 S.W.2d 282, 285 (Mo.App.1993). "[T]he rights available under § 552.020 are personal to the accused who may waive them." *State v. Lee,* 660 S.W.2d 394, 398 (Mo.App.1983) (quoting *Anderson v. State,* 493 S.W.2d 681, 684 (Mo. App.1973)). Mr. McBane's first point is denied.

■ In his second point on appeal, Mr. McBane claims that the trial court erred by failing to *sua sponte* hold another competency hearing after receiving the December 19, 1993 report prepared by Dr. Gowdy and Dr. Peters. Mr. McBane argues that the report's conclusion that he "has the capacity to understand the proceedings against him ... and to assist his attorney" is irreconcilable with the conclusion that he "does suffer from a mental disease," and with the recommendation that he "be psychiatrically hospitalized for treatment pending the court's determination of the issue of mental fitness to proceed." Mr. McBane argues that these irreconcilable conclusions, standing alone, raise sufficient doubt as to his fitness to proceed to obligate the court to *sua sponte* conduct such a hearing.

Mr. McBane cites *Briggs v. State,* 509 S.W.2d 154 (Mo.App.1974), in support of his contention. In *Briggs,* this court held that, under the sparse facts in that case, where the report of a mental examination stated that the accused " '*has* a mental disease and defect within the meaning of Section 552.010, which existed at the time of the alleged offense,' that he '*requires psychiatric hospitalization pending further proceedings,*' and that 'he has the capacity to understand the proceedings against him and assist in his own defense,' " such conclusions were irreconcilable with one another and, standing alone, cast enough doubt about the accused's fitness

to proceed that a trial court's failure to conduct a competency hearing constituted an abuse of discretion. *Id.* at 157.

As this Court noted in *State v. Ashley,* 616 S.W.2d 556, 559 (Mo.App.1981), there is no firm rule in Missouri case law as to when a trial court must *sua sponte* hold a competency hearing, and the result in each case is dependent upon the particular facts in that case. The facts in *Briggs* are markedly different from those in the case at bar. In *Briggs,* this Court was faced with a record which was described in the opinion as "anemic at best." *Briggs,* 509 S.W.2d at 155. The only information in the entire record on the defendant's mental state was the one report which contained the findings quoted above. Under these circumstances, it is evident that this Court found the "irreconcilability" of the findings to be troubling because of a total lack of any other clinical information in the record which would place those findings in any kind of explanatory context. *Id.* at 157.

Such is not the case here. In addition to the December 19, 1992 report of which Mr. McBane now complains, there are the reports of two prior mental examinations in the record, as well as a transcript of a full evidentiary hearing on the subject of Mr. McBane's competence to proceed with trial. (Mr. McBane is complaining that there wasn't a *second* competency hearing.) In the context of all of the information that was before the trial court, any "inconsistency" in the December 19, 1993 report, which found a defendant with a mental disease to be competent to stand trial while at the same time requiring further hospitalization, is explainable by the fact of an ongoing treatment program for his condition, which was in partial remission.

Unlike *Briggs,* in which the trial court failed to follow up on questions raised because the findings had no harmonizing explanation in the record, the findings in the case at bar occurred in the context of a thorough and conscientious search for the truth about Mr. McBane's condition. In fact, the trial court even cautioned Mr. McBane's counsel to file a motion to put on additional evidence if he had any disagreements with the Decem-

ber 19, 1993 report. Mr. McBane's counsel raised no such disagreement; instead, he expressly concurred in the trial court's decision to proceed with trial. Mr. McBane's second point is denied.

The judgment of the trial court is affirmed.

All concur.