**STATE of Missouri, Respondent,**

v.

**Morris LOCKETT, Appellant.**

No. ED 84850.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 21, 2005.

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Jefferson City, MO, for respondent.

NANNETTE A. BAKER, Judge.

Morris Lockett ("Defendant") appeals from his conviction of burglary in the second degree and stealing a firearm. A jury convicted Defendant of burglary in the second degree, Section 569.170,[1] and stealing a firearm, Section 570.030. Defendant

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

was sentenced as a prior and persistent offender, to two consecutive terms of fifteen years' imprisonment. On appeal, Defendant alleges that the trial court erred in overruling Defendant's hearsay objections and allowing Sergeant Wallingsford ("Wallingsford") to testify to statements made to her by Peggy Rosenthal ("Rosenthal"), the owner of Baton Music, concerning the location of the guitars that had been stolen in the burglary. Defendant also claims that allowing Detective White ("White") to testify to statements made to him by the father of Stanley McKinley ("Co-defendant") was error. Co-defendant's father, Willie McKinley ("Father"), answered White's questions about whether Co-defendant lived at the home where the stolen weapons were found. Defendant also asserts that the trial court erred in permitting the prosecutor, over objection, to misstate the law on accessory liability during his closing argument, and in failing to advise the jury to disregard the erroneous comment. Respondent has moved to dismiss the appeal pursuant to the Missouri Escape Rule. As discussed below, we deny the Motion. We find no error and affirm.

*Background*

On December 30, 2002, at approximately 11:00 a.m. the home of Woodie Bell ("Bell") was burglarized. Bell lived in a basement apartment in Maplewood, Missouri, in St. Louis County. The apartment complex was surrounded by warehouses and was secluded. Bell was not at home at the time of the burglary. Lonnie Weilmuenster ("Weilmuenster"), who lived in the apartment above Bell, was home that morning and heard a knock on the downstairs door followed by a loud noise. A few minutes later, he heard another loud noise and went to the window to see what was happening. Weilmuenster saw a man loading a guitar case into the backseat of a car about 30–40 feet away, in the parking lot in front of the building. Through the window of the car, he could see a keyboard and a guitar case in the backseat. He saw another man already in the car. He watched the two men for 30–40 seconds and then saw them drive away. By photographic line-up and in court, Weilmuenster identified Defendant as the man he saw loading the guitar. He identified Co-defendant as the man driving the car.

Weilmuenster went downstairs and found the door to Mr. Bell's apartment open and the door frame broken. He called 911, and Wallingsford, of the Maplewood Police Department, arrived at the apartment and took charge of the investigation. Weilmuenster gave a statement and told her that he believed he could identify the two men who left the scene. Bell was called to the scene. Missing from the apartment were: two rifles, a shotgun, some bayonets, four guitars, a keyboard and some CDs. Bell was able to give the police serial numbers on some of the stolen items.

The crime took place in St. Louis County. Many different municipalities and several police departments were involved in the investigation. Detective Richard White ("White") of the Maryland Heights Police Department received information of possible stolen firearms at the house of Co-defendant's father, Willie McKinley ("Father"). White and another detective from St. Louis City went to the McKinley home and were given permission to search. The detective asked Father where his son's bedroom was, and he pointed out the room where Co-defendant stayed. In the room the detectives found two rifles, a shotgun and a bayonet. The guns were packaged and placed in evidence at the Maryland Heights Police Department. White later called Wallingsford and told her that he had the weapons that had been

reported stolen. Bell identified the weapons as his.

Wallingsford received a call from Officer Hunt ("Hunt") with the University City Police, advising her that Peggy Rosenthal ("Rosenthal"), the owner of Baton Music in University City, had called and told Hunt that she had a Supro Lap Steel guitar, which was one of the items missing from Bell's apartment. Bell identified the guitar as belonging to him. Wallingsford called Rosenthal, who stated that Co-defendant was the man who sold her the guitar. Wallingsford obtained enough information to prepare a photo line-up on Co-defendant. Later that day she took the photo line-up out to Weilmeunster's apartment and he identified Co-defendant as the man that he saw driving the car outside Bell's apartment the day of the burglary.

The next day, Wallingsford received a second call from Rosenthal who advised her that a customer had come into Rosenthal's store and told her that he purchased several guitars from First Cash Pawn Shop ("First Cash"), but that he had returned them because he believed they were stolen. Based on the information she received from Rosenthal, Wallingsford immediately called First Cash and sent Bell there to identify the guitars as the ones taken from his apartment. Using a pawn ticket, the manager of First Cash, Willie Austin ("Austin"), was able to testify the guitars were sold to the pawnshop at 12:18 on the afternoon of the burglary. The pawn ticket included serial numbers that matched those of the stolen guitars. The pawnshop requires individuals selling merchandise to provide identification. The name of the individual selling the merchandise and other identifying information is placed on the ticket. The pawn ticket for the three stolen guitars included Defendant's identifying information and signature. Austin testified that he knew Defendant from the store.

Wallingsford prepared a photo line-up including a photograph of Defendant and took it to Weilmuenster on February 12, 2003, and he identified Defendant as the man he saw loading a guitar into the back of the car outside of his apartment on the day of the burglary.

Defendant testified at trial and denied being at Bell's apartment on the day of the burglary. He acknowledged that he had known Co-defendant for 25–30 years and that they occasionally did drugs together. He admitted selling the stolen guitars to First Cash. He claimed at trial that on the day of the burglary he ran into Co-defendant at the pawnshop, that Co-defendant owed him some money, and that he convinced Co-defendant to give him the guitars to pawn in payment of the debt. He denied knowing that the guitars were stolen.

### Missouri Escape Rule

■ Respondent filed a Motion to Dismiss Appeal based on the Missouri Escape Rule, which provides that defendants who escape or flee during trial or post-trial proceedings forfeit their right to appeal. Defendant was convicted on February 25, 2004. On that date, the minute entry on the docket sheet reflects that the court set a bond of $25,000 cash. The court also announced that sentencing was set for April 16, 2004. On March 1, 2004, the docket sheet reflects that a professional bond was filed and Defendant was released from custody. On March 5, 2004, after the court learned that Defendant was not in custody, it ordered his bond to be reset at $25,000 cash only, and ordered a Capias Warrant to be issued. The docket sheet entry states that defendant failed to appear, however, there is no indication that a hearing was set for that date. On April 1,

2004, the court again ordered a warrant and set no bond for Defendant. A notice of hearing on bond forfeiture was sent to all parties on May 21, 2004, and the hearing was eventually set for July 1, 2004. Defendant appeared and was sentenced on July 1, 2004. Respondent argues that this delay in sentencing from April 16, 2004 until July 1, 2004 is sufficient to invoke the escape rule because it adversely affected the criminal justice system.

 The escape rule is a judicially-created doctrine that operates to deny the right of appeal to a defendant who escapes justice. *Nichols v. State*, 131 S.W.3d 863, 865 (Mo.App. E.D.2004). A defendant who escapes or flees the jurisdiction of the court either during trial or in the process of post-trial proceedings forfeits his rights to an appeal on the merits of the case. *State v. Crump*, 128 S.W.3d 642, 642–643 (Mo.App. E.D.2004). The rule is properly applied when it is determined that the escape adversely affected the criminal justice system. *Id.* at 643. Whether or not to use the escape rule to dismiss an appellant's claims of error rests within the sound discretion of the appellate court. *Harvey v. State*, 150 S.W.3d 128, 129 (Mo. App. E.D.2004).

Having considered the evidence before us, we deny Respondent's Motion to Dismiss Appeal. We find that the record contains insufficient information for the escape rule to apply. Since there is no entry on the docket sheet for April 16, 2004, it is impossible for us to determine if the sentencing was actually set for that date. In addition, there is no indication that Defendant failed to appear for sentencing on that date. Furthermore, Defendant did not "escape" in the usual sense of the word; he was released on bond, whether mistakenly or not. Therefore, we are exercising our discretion to consider Defendant's appeal on the merits. ·

*Hearsay*

 In his first point on appeal, Defendant alleges that the trial court erred in overruling his hearsay objections and allowing Wallingsford to testify to statements made to her by Rosenthal, the owner of Baton Music, concerning the location of stolen guitars. Defendant also claims that the trial court erred in allowing White to testify to statements made to him by Father about whether Co-defendant lived at the home where the stolen weapons were found. Specifically, Defendant claims that he was deprived of his right to confront his accuser and to cross-examine the proponents of the statements.

 Admission of evidence is evaluated for abuse of discretion. *State v. Wolfe*, 13 S.W.3d 248, 262 (Mo. banc 2000). A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal. *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001).

 Hearsay statements are out-of-court statements used to prove the truth of the matter asserted, which, as a rule, are inadmissible. *State v. Douglas*, 131 S.W.3d 818, 823 (Mo.App. W.D.2004). Not all out-of-court statements are hearsay in that to constitute hearsay the statement must be offered for the truth of the matter asserted. *Id.* An out-of-court statement offered not for the truth of the matter asserted, but to explain subsequent police conduct, is not hearsay and is, therefore, admissible, assuming it is relevant. *Id.* at 824.

Here, Wallingsford testified about her conversation with Rosenthal in which Rosenthal told Wallingsford that she had a guitar in her possession that she believed was stolen. Rosenthal also told Wallings-

ford about a customer who had purchased several guitars at First Cash that he believed to be stolen. These statements, together with Rosenthal's statement that she had received the guitar from Co-defendant, were used to explain the subsequent behavior of the police in going to First Cash with a photo line-up, and in sending Bell, the owner of the stolen guitars, to identify them. The statements were not used to prove that Rosenthal actually had a stolen guitar in her possession. Nor were they used to prove that Rosenthal's customer, who had returned the guitars to First Cash, had actually bought stolen guitars from First Cash.

Defendant cites *State v. Shigemura* as a case on point for holding that hearsay testimony from a police officer was prejudicial error. 680 S.W.2d 256 (Mo.App. E.D.1984) (where a police officer testified that he was directed by a confidential informant to a stakeout at which the defendant was planning to sell stolen property). But in *Shigemura*, the prosecution had to prove the defendant knew or believed the items in his possession had been stolen. *Id.* at 257. The court held that the hearsay statement of the confidential informant was used as evidence that the defendant had the requisite knowledge to commit the crime. *Id.* Thus, the jury was allowed to consider the statement as evidence linking the defendant to the crime. *Id.* at 257–258.

In this case, there was ample evidence of Defendant's connection to the crime without the out-of-court statements. In fact, Defendant testified that he had sold the stolen guitars to the pawn shop. Wallingsford's testimony of Rosenthal's statement was not used to prove an element of the crime, as was the case in *Shigemura*. We find no error on the trial court's ruling on this statement.

Defendant also challenges White testifying to Father's statements concerning Co-defendant's living status in Father's home as error. White testified that Father told him that Co-defendant lived "periodically" at the house where the stolen weapons were found. After his conversation with Father, White contacted Wallingsford to inform her of White's possession of the stolen weapons. Here again, the trial court allowed the testimony not for the truth of the matter asserted, that Co-defendant lived in Father's house, but to explain White's subsequent behavior. We find no error on the trial court's admission of this testimony. Point denied.

## Closing Argument

Next, Defendant asserts that the trial court erred in permitting the prosecutor, over objection, to misstate the law on accessory liability during his closing argument, and in failing to advise the jury to disregard the erroneous comment. Defendant argues that this violated his right to a fair trial, since the prosecutor's comment led the jury to believe that even if they believed Defendant's testimony that he pawned the guitars but did not commit the burglary, they could still find him guilty as an accessory. Defendant failed to include this claim of error in his Motion for a New Trial and he asks us to review for plain error.

The standard of review for alleged error in closing argument depends upon whether defense counsel objects. *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc.1993), *cert. denied* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Where defense counsel objects, appellate courts will reverse the trial court's decision with regard to closing argument only upon a showing of abuse of discretion by the trial court. *Id.* Plain error review mandates reversal only if the error results in mani-

fest injustice. *Id.* Plain error review also requires that the argument have a decisive effect on the jury's determination. *Id.* Appellate courts of this state rarely grant relief on assertions of plain error as to closing argument ... because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Crawford,* 904 S.W.2d 402, 407 (Mo.App. E.D.1995). Because trial strategy looms as an important consideration in any trial, assertions of plain error concerning matters contained in closing argument are generally denied without explication. *Id.*

The trial court is in the best position to appraise the consequence of a closing argument, and has broad discretion to determine if the particular line of argument is proper. *State v. Blakeburn,* 859 S.W.2d 170, 174 (Mo.App. W.D.1993). Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments. *Id.* However, it is equally recognized that the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments. *Id.* In ruling on the propriety of the closing argument, the challenged comment must be interpreted in light of the entire record rather than in isolation. *Id.*

In this case, both counts with which Defendant was charged were submitted to the jury on the theory of accomplice liability. The instructions given to the jury on both the count of second degree burglary and stealing a firearm contained the following language:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

MAI–CR3d 304.04.

The Prosecutor emphasized in his closing argument that this case was submitted on the theory of accomplice liability. His words to the jury were:

In addition, you're gonna be lookin' at these instructions that we send back with you. That's how every case concludes. Every case concludes by the jury looking at the instructions. And the first portion of the instructions will indicate a person is responsible for his own conduct and he's also responsible for the conduct of another person in committing an offense if he acts with the other person with a common purpose of committing the offense, or if for the purpose of committing that offense he aids or encourages the other person in committing the offense.

This is an accurate restatement of the jury instruction on accomplice liability.

However, after Defendant's closing argument, in his rebuttal, the prosecutor made the following statement:

I'm asking you to look over those instructions carefully and look over especially the one about acting with another. Because that's how it's charged. If he had any portion to play in this burglary and stealing of a firearm, guilty. That's what it says. If he aids or encourages. If he helps out. If he sells items at a pawnshop. Guilty. That's what that says.

At this point, Defendant objected and the trial court overruled the objection. Defendant argues that the prosecutor was misstating the law and instructing the jurors that even if they believed Defendant's testimony that he met Co-defendant at the pawn shop and merely pawned the guitars, they must still find Defendant guilty of the crimes charged based on accomplice liability. He states that the trial court abused its discretion in overruling the objection and not giving a limiting instruction to the jury. We do not agree.

A conviction will be reversed for improper argument only if it is established that the comment in question had a decisive effect on the jury's determination. *State v. Winfield*, 5 S.W.3d 505, 516 (Mo. banc 1999). When reviewing an argument for plain error, the burden is on the defendant to prove the decisive significance. *Id.* Here, the record does not suggest evidence that the prosecutor's single comment during the closing argument had such decisive effect. We find that there was sufficient evidence for the jury to convict Defendant without the consideration of a stray comment by the prosecutor. This point is denied.

Judgment affirmed.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.